**STATE of Iowa, Appellee,**

v.

**Gary Eugene FINCHUM, Appellant.**

**No. 84–468.**

Supreme Court of Iowa.

March 20, 1985.

---

Charles L. Harrington, Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Steven K. Hansen, Asst. Atty. Gen., and David E. Richter, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

UHLENHOPP, Justice.

This appeal presents two issues: whether the trial court improperly admitted evidence of defendant Gary Eugene Finchum's other crimes which was used to demonstrate that he was a bad person, and whether the trial court erred in mandatorily sentencing defendant to consecutive terms under section 901.8 of the Iowa Code of 1983.

The trial information charged that Finchum broke into the home of Hope Thompson in Council Bluffs, Iowa, on the night of October 16, 1983. The prosecution showed at trial that Finchum had thrown a rock through a window in the back door of Thompson's home and in so doing had cut himself; that blood was found in the house; and that Finchum took a stereo and speakers from the house. The prosecution also showed that Finchum next went to Thompson's next-door neighbors, Rod and Becky Phares, seeking to use the telephone. The Phares noted that Finchum appeared to have been drinking, but stated that his speech was not noticeably slurred. They also observed that Finchum had blood on his shirt and hand. The Phares permitted Finchum to use the phone but, after attempting to call, Finchum told them that the party was not there.

Finchum asked the Phares if they would take him home, and Rod Phares said he would. Finchum then asked Phares to wait a minute while he got his stereo equipment from the alley. When Finchum returned with the stereo Becky Phares became suspicious, believing that she recognized the equipment as belonging to Thompson.

Rod Phares took Finchum to the place that Finchum described as his residence— behind a Schwinn shop. Meantime Becky Phares went to Thompson's house, saw that it had been broken into, and called the police.

The police found blood inside the house, which became a trail of blood from Thompson's house to the Phares' residence.

The trial information charged Finchum with second-degree burglary, and a jury found him guilty as charged. Following sentence, Finchum appealed.

I. On direct examination Finchum testified he knew Thompson. He said he had not "thought about Hope Thompson for a long, long time." On cross-examination, the prosecutor asked if Finchum had visited Thompson within the past two months. Finchum replied that he had not. The prosecutor then continued with this line of testimony which defendant claims is reversible error:

Q. Did you ever burglarize her apartment before? A. No.

Q. In fact, during the meeting in late August or early September when you went and visited with her, she wouldn't even let you in the house, isn't that true? A. I didn't go down there in late September.

Q. Then out on her front porch you said, "I'm sorry I broke into your house." Didn't you make that comment? A. No, sir.

Q. Isn't this the second burglary at Hope Thompson's residence for you? A. No. I did not go down to her house.

Q. In fact, you even said, "I'm sorry I took your colored TV," that first occasion? A. No, no, sir.

After the defense rested the prosecutor recalled Thompson as a rebuttal witness. She testified defendant had visited her in the summer of 1983. Over Finchum's objection of irrelevancy, the prosecutor asked her about the circumstances of the visit and the following exchange took place:

Q. What happened when he came over? A. He knocked on the door and I answered it and he said—

Mr. Heckerman [defense attorney]: Your Honor, I would like to interpose an objection here. This is for the purposes of impeachment. I believe what he is trying to show is Mr. Finchum has, in fact, talked to her within the last six months or the last eight months. I think the context of the conversation is probably irrelevant to these proceedings.

The Court: Overruled.

Mr. Kouris [prosecutor]: Q. You may continue. A. I had answered the door and he asked me if he could talk to me, that he wanted to apologize. And I didn't really think that I should not talk to him because that might have caused more trouble than to talk to him.

Q. Did you let him into the house? A. No. We sat out on the porch.

Q. What did he want to apologize about? A. An earlier incident with—I had been burglarized again—or previous to this last time for a colored TV and they had broken in the same way as the first time. That's why I put bullet-proof glass in that one window and he had come to apologize for that.

Q. That first burglary, that occurred in what year? A. that was '81.

Q. And he came back to apologize for that? A. Right.

Q. What did he say? A. Well, he said that the police had mentioned my name and brought up the colored TV and everything else and that that was part of the reason that he had been sent up. And he was apologizing for it and that he had changed and that he didn't do that kind of thing anymore and that he had went through alcoholism classes and I don't know what other kind of classes, but there might have been, you know, others. But he had been through a program.

Finchum now objects that this line of testimony violated Iowa Rule of Evidence 404(b) which prohibits evidence of other crimes, wrongs, or acts except to prove

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ We agree that this evidence should not have been admitted. The general rule is that evidence to show the commission of crimes other than that for which the defendant is presently on trial is irrelevant and inadmissible. *State v. Wright*, 191 N.W.2d 638, 639 (Iowa 1971). The record contains no evidence that the prosecution sought to use any of the exceptions in rule 404(b).

In *Wright* we held that evidence of other thefts of soybeans by the defendant, who was presently being tried for theft of soybeans, was highly prejudicial to him. *Id.* at 642. There, as here, the other crimes did not fit into one of the exceptions set forth in rule 404(b). In that case we required a new trial.

■ We have nearly the same case here. Finchum was on trial for burglary of Hope Thompson's domicile. The evidence that the prosecution sought to introduce was that the defendant apologized to Thompson for a previous burglary of her home. This evidence is highly prejudicial in that it appears to demonstrate previous similar conduct with regard to Thompson. It does not fit into any exception of rule 404(b), nor does the State contend that it does. This error necessitates a new trial.

■ II. We also address the second issue in the appeal, as it may recur on retrial. The question is whether the trial court erred in holding that it was bound to sentence the defendant to consecutive sentences based on section 901.8 of the Iowa Code. We hold that the trial court erred.

At the time that Finchum was arrested for the burglary, he was on parole for another offense. The trial court interpreted this to mean that Finchum was "committed" within the meaning of the statute.

■ Section 901.8 of the Iowa Code reads as follows:

If a person is sentenced for two or more separate offenses, the sentencing judge may order the second or further sentence to begin at the expiration of the first or succeeding sentence. If a person is sentenced for escape under section 719.4 or for a crime committed while confined in a detention facility or penal institution, the sentencing judge shall order the sentence to begin at the expiration of any existing sentence. If the person is presently in the custody of the director of the Iowa department of corrections, the sentence shall be served at the facility or institution in which the person is already confined unless the person is transferred by the director. If consecutive sentences are specified in the order of commitment, the several terms shall be construed as one continuous term of imprisonment.

The word "confined" in this section means "committed". *State v. Jones*, 298 N.W.2d 296, 298–99 (Iowa 1980).

■ The first sentence of this statute does not concern us. It is merely a discretionary standard which was not used in this case. Both the State and the defense rely on the second sentence. They agree that a person on parole is not "committed" within the meaning of the statute. Cited for this proposition is the statutory definition of parole given in section 906.1 of the Iowa Code Supplement of 1983:

Parole is the release of a person who has been committed to the custody of the director of the Iowa department of corrections by reason of the person's commission of a public offense, which release occurs prior to the expiration of the person's term, subject to supervision by the district department of correctional services, and on conditions imposed by the district department.

The contention is that if the parolee is released from commitment, he is no longer committed and therefore does not fall within the purview of 901.8.

■ We agree. Criminal statutes are strictly construed, and all ambiguities are resolved in favor of the accused. *State v. Lawr*, 263 N.W.2d 747 (Iowa 1978).

■ Where the trial court has discretion it must exercise that discretion. *State v.*

*Dvorsky,* 322 N.W.2d 62 (Iowa 1982). If Finchum is convicted on retrial, the sentencing court will have to exercise its discretion in the matter of a concurrent or consecutive sentence in light of the circumstances.

We return the case to district court for retrial.

REVERSED AND REMANDED.