**STATE of Iowa, Appellee,**

v.

**Douglas Allen BAKER, Appellant.**

**No. 96–160.**

Supreme Court of Iowa.

Feb. 19, 1997.

**12**

Linda Del Gallo, State Appellate Defender, and Sharon R. Stevens and Christopher A. Cooklin, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, John P. Sarcone, County Attorney, and Mary Pat Hofmann, Assistant County Attorney, for appellee.

Considered by LARSON, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Defendant, Douglas Baker, was charged with and convicted of first-degree burglary and second-degree robbery. On appeal, he challenges his burglary conviction, claiming that the elements of the offense were not met because a driveway does not satisfy the definition of "occupied structure." He also claims he should not have been subject to the mandatory minimum sentence provisions of Iowa Code section 902.7 (1995). We conclude, based on the definition in section 702.12, a driveway satisfies the definition of an "occupied structure." We also find there was substantial evidence that Baker represented he had immediate possession and control of a firearm during the commission of the offenses. Thus the district court correctly imposed the mandatory minimum sentence. We affirm.

## I. Background Facts and Proceedings.

The following facts were established by substantial evidence at trial: At approximately 3:00 p.m. on July 24, 1995, Dawn Tallman of Altoona, Iowa, returned to her home with her three children, ages seven, six, and four. She opened the garage door with the automatic opener and saw an unfamiliar car in the garage. She stopped her minivan on the driveway a short distance behind the unfamiliar car. Two men were walking out of the basement of her home into the garage, carrying the Tallmans' television set. Tallman asked the men what they were doing, and one of them stated that they had permission to be there. She told them that they did not and that they were robbing her.

At that point, the two men went back into the basement. A few seconds later, three men came running out of the basement, without the television set, and got into their car parked in the garage. Tallman removed the key from the minivan and applied the emergency brake because she thought the men were going to back out and ram her car in an attempt to escape. Although the men rammed her van with their car, it did not move, and the men were unable to get their car out of the garage.

The driver of the car (later identified as Baker) got out and approached Tallman, telling her to get out of the van. She told her oldest son to run to the neighbors and call the police. To draw attention, Tallman began screaming "Fire!" and "911!" After she refused to get out, Baker opened the van door and tried to pull her out. Tallman began kicking at him with her legs and jabbing at him with her keys. As a result of Baker's pulling on her legs, she was injured and bruised.

After Baker was unsuccessful in pulling Tallman from the van, he yelled "get the gun" to one of the accomplices, who was waiting by the car in the garage. This caused Tallman to be "very scared." A few seconds after hearing this request, the accomplice ran away. Baker then fled. Several minutes later, the police arrived. It was later determined that, earlier that day, Baker and his accomplices had broken into Tallman's husband's car in a parking garage in downtown Des Moines and had taken his garage door opener and insurance information, which listed his home address.

The State charged Baker with first-degree burglary and second-degree robbery. On the first day of trial, the State amended the trial information, pursuant to Iowa Code section 902.7, to include an allegation that Baker represented he was in the immediate possession or control of a firearm during the com-

mission of the offenses. *See* Iowa R.Crim.P. 6(6). This statute provides a mandatory minimum sentence of five years when a firearm is involved in the commission of a forcible felony. After the State rested its case, and at the close of the evidence, Baker moved for a judgment of acquittal on the first-degree burglary charge. He urged there was no evidence that the offense occurred in an "occupied structure." Baker also objected to the submission of an interrogatory to the jury concerning the use of a firearm, claiming there was no evidence in the record of the use of a firearm or its immediate presence. The court overruled Baker's motion and objections and submitted the case to the jury.

The jury returned a guilty verdict on all charges and affirmatively answered the interrogatories, finding that Baker represented he was in the immediate possession or control of a firearm during the commission of both crimes. Baker was sentenced to two consecutive terms of imprisonment, not to exceed twenty-five years on the burglary conviction, and not to exceed ten years on the robbery conviction. Pursuant to Iowa Code section 902.7, the court ordered Baker to serve a mandatory five years on the sentences.

On appeal, Baker challenges his burglary conviction, claiming that a driveway is not an "appurtenance" to a building or structure and, therefore, does not satisfy the definition of an occupied structure. Baker also argues there is insufficient evidence to establish that he represented he was in the immediate possession or control of a firearm. Finally, he claims he was denied his right to the effective assistance of trial counsel. Our scope of review is for the correction of errors at law. Iowa R.App.P. 4.

## II. *Is a Driveway an Occupied Structure?*

With his first claim, Baker asserts he cannot be convicted of first-degree burglary because his crime was not committed in an occupied structure. Baker was charged with first-degree burglary, which is defined in Iowa Code section 713.3 as follows:

A person commits burglary in the first degree if, while perpetrating a burglary *in or upon an occupied structure* in which one or more persons are present, the person has possession of an explosive or incendiary device or material, or a dangerous weapon, or intentionally or recklessly inflicts bodily injury on any person....

(Emphasis added.)

Iowa Code section 702.12 defines an "occupied structure" as:

[A]ny building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value. Such a structure is an *"occupied structure"* whether or not a person is actually present.

▆ The State argues that a driveway is an "appurtenance." Black's Law Dictionary defines appurtenance as:

That which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or other easement to land....

Black's Law Dictionary 103 (6th ed. 1990). A thing is "appurtenant" to something else "when it stands in relation of an incident to a principal and is necessarily connected with the use and enjoyment of the latter." *Id.; accord State v. Hill,* 449 N.W.2d 626, 628 (Iowa 1989). Like the definition of occupied structure, the definition of appurtenance is broad. The key factor is that the appurtenance must be connected in use with the principal thing.

▆ We conclude that a driveway is an appurtenance to a building or structure. Driveways are closely associated with, and connected to, buildings and structures. In most instances, they are created to enhance the use and enjoyment of the building or structure. To phrase it in the language of Black's Law Dictionary, a driveway clearly "belongs to something else." Usually, drive-

ways would not be built if not for the existence of the principal building or structure.

To satisfy the remainder of the definition in section 702.12, the driveway must be occupied by persons for the purpose of carrying on business or other activities, or used for the storage or safekeeping of anything of value. Driveways are often occupied by persons for numerous types of activities, such as sporting activities, children playing, vehicle washing, cookouts, and countless other activities. Also, driveways are commonly used for the storage or safekeeping of things of value, namely automobiles, boats, and trailers. Driveways thus satisfy the requirements of an appurtenance as outlined in *Hill*, 449 N.W.2d at 627. We conclude Baker was not entitled to a judgment of acquittal on the burglary charge.

In defining an "occupied structure" in its instruction to the jury, the district court did not use Iowa Criminal Jury Instruction 1300.13 (1993). The court proposed and later instructed the jury that

an "occupied structure" is any home and the grounds surrounding it. Such structure is an "occupied structure" whether or not a person is actually present.

Baker's objection to the instruction was:

I object to proposed Instruction No. 23. I don't believe that it is the law, and I don't believe that that's the stock instruction. I don't think that's the definition of an occupied structure, and so I object and take exception to the instruction.

We find this objection inadequate to preserve error. In *State v. Fisher*, 279 N.W.2d 265 (Iowa 1979), we held that

a party is bound by the substance of an objection or exception to instructions made at trial, and that an objection to an instruction must be of sufficient clarity and specificity to alert the trial court to the particular error alleged and relied upon. Specifically we have held objections that instructions do not "accurately state the law" lack sufficient specificity to constitute bases for error.

*Fisher*, 279 N.W.2d at 267 (citations omitted).

To establish first-degree burglary under the circumstances of this case, the State was required to prove that Baker, "while perpetrating a burglary in or upon an occupied structure in which one or more persons are present, . . . intentionally or recklessly inflicts bodily injury on any person. . . ." Iowa Code § 713.3. Baker's motion for judgment of acquittal raised the issue as to whether the presence of, and injury to, Tallman on the driveway satisfied the "occupied structure" definition. We hold it does.

The failure to preserve error upon the court's instruction on the definition of an occupied structure may give rise to a claim of ineffective assistance of counsel. However, this would require a showing of prejudice resulting from counsel's failure. *See Hill*, 449 N.W.2d at 628. In light of our holding as to the meaning of "appurtenance," we are convinced that if the court had submitted a proper instruction defining "occupied structure" and "appurtenance," there is no reasonable probability the jury would have reached a different result. Baker was not prejudiced by counsel's failure to make a proper objection to the court's proposed instruction.

### III. *Mandatory Minimum Sentence.*

Baker's next claim is that the record fails to establish that he represented he was in the immediate possession or control of a firearm during the commission of the offense. Therefore, he urges, the district court erred in submitting this issue to the jury. We disagree.

Iowa Code section 902.7 provides in relevant part:

At the trial of a person charged with participating in a forcible felony, if the trier of fact finds beyond a reasonable doubt that the person is guilty of a forcible felony and that *the person represented that the person was in the immediate possession and control of a firearm,* . . . the convicted person shall serve a minimum of five years of the sentence imposed by law. . . .

(Emphasis added.) This section is implemented by Iowa Rule of Criminal Procedure 21(2), which requires the submission of a special interrogatory to the jury when a defendant is alleged to be subject to its mini-

mum sentence provision. *State v. Teeters,* 487 N.W.2d 346, 349 (Iowa 1992).

■ Here, because the jury found that Baker represented he was in the immediate possession or control of a firearm, the court ordered him to serve the mandatory minimum of five years. Iowa Code section 902.7 is an enhancement provision, not a criminal offense. *State v. Aguiar–Corona,* 508 N.W.2d 698, 703 (Iowa 1993). The purpose of the provision is to deter the use of firearms by imposing mandatory minimum penalties. *Id.*

■ The evidence clearly establishes that Baker told his accomplice to "get the gun." Despite this statement, Baker argues that the State has introduced no evidence that he represented he had actual possession of a firearm. However, Iowa Code section 902.7 does not require actual possession of a gun. It applies not only to criminals who display firearms or are armed with firearms, but also to those who merely represent that they have immediate possession and control of a firearm.

■ Further, the outcome is not altered by the fact that Baker told his accomplice to "get the gun." There is no distinction between principals who perpetrate a crime and those who aid and abet them. All persons involved in the commission of an offense may be charged, tried, and punished as principals. Iowa Code § 703.1; *State v. Finnigan,* 478 N.W.2d 630, 632 (Iowa 1991). Because of Iowa Code section 703.1, which applies to both guilt and punishment, even defendants who do not possess or control a gun may be subject to the mandatory minimum sentence provisions of section 902.7. *See State v. Ohnmacht,* 342 N.W.2d 838, 842 (Iowa 1983) (section 902.7 applies to all persons convicted of forcible felonies involving the use of firearms, whether a particular offender was armed or not); *State v. Sanders,* 280 N.W.2d 375, 378 (Iowa 1979) (aider and abettor subject to mandatory five-year sentence under section 902.7 for use of firearm, despite the fact that the firearm was used by another participant in the crime); *State v. Hayes,* 532 N.W.2d 472, 478 (Iowa App.1995) (mandatory minimums for the control or display of a firearm during a forcible felony are applied to principals and aiders and abettors, regardless who actually holds or displays the firearm).

We conclude there was sufficient evidence to support a finding that Baker represented he had immediate possession and control of a firearm. We affirm Baker's sentencing under Iowa Code section 902.7.

IV. *Ineffective Assistance of Trial Counsel.*

Baker's final argument is that he was denied his right to the effective assistance of trial counsel. Baker contends his attorney failed to introduce testimony of alibi witnesses and failed to object and make a record concerning prosecutorial misconduct which allegedly occurred during closing argument. Baker claims the record is insufficient to allow us to address these claims. He requests that we allow him to raise these claims in an application for postconviction relief. The State agrees.

■ Under a claim of ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom. *State v. Shumpert,* 554 N.W.2d 250, 254 (Iowa 1996). Generally, these claims are best preserved for postconviction proceedings, in order for a more complete record to be developed on various issues. *State v. Bumpus,* 459 N.W.2d 619, 627 (Iowa 1990).

■ We believe the record is inadequate to address the merit of Baker's claims. We therefore reserve the issues for postconviction proceedings so that an adequate record may be developed, and the attorney charged with rendering ineffective assistance may have an opportunity to respond to the claim. *See State v. Constable,* 505 N.W.2d 473, 479 (Iowa 1993).

**AFFIRMED.**