**STATE of Iowa, Appellee,**

v.

**Lawrence Albert PACE, Appellant.**

No. 98–930.

Supreme Court of Iowa.

Nov. 17, 1999.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Richard Crowl, County Attorney, and Jeff TeKippe, Assistant County Attorney, for appellee.

Considered by LARSON, P.J., and CARTER, TERNUS, CADY, and HARRIS,* JJ.

CADY, Justice.

Lawrence Pace appeals from a judgment and sentence following his convictions for burglary in the first degree and going armed with intent. He claims there was insufficient evidence to support the burglary conviction and he received ineffective assistance from his trial counsel. We affirm in part, reverse in part, and remand.

## I. Background Facts and Proceedings.

Lawrence Pace went to the rural Pottawattamie County home of Duane Myers around noon on July 27, 1997. Myers was in the home with his girlfriend, Maureen Pace. Maureen and Pace were formerly married. Maureen was the primary caretaker of their three minor children. Pace was a joint custodial parent with visitation rights and was entitled to exercise visitation of the children at the time he went to Myers' home.

Myers' home was set back approximately 120 feet from a gravel road located in front of the home. A gravel driveway ran from the road to a garage located around eighty feet behind the home. The house included a room which extended off the back of the house. The room had a doorway with a screen door on the outside

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

which opened to the outside, and a heavy wooden door on the inside which opened to the inside. Myers used the room as a porch. It had exterior walls consistent in appearance with the remainder of the house and was covered by the roof of the house. A narrow cement sidewalk extended from the driveway to the back door with a small cement step located just outside the door. There was no roof or overhang above the door. A yard surrounded the house, with farm fields a greater distance from the house.

Pace drove his pickup truck from the road onto the gravel driveway. He parked on the driveway near the house, exited the vehicle, walked to the back door, and rang the doorbell. Maureen stepped onto the porch. Pace asked her where he could locate their children.

Although Maureen had previously left a message for Pace that the children would be at his sister's house, she reiterated that he could pick up the children at his sister's house. Maureen then opened the door of the porch and stepped outside. An argument quickly followed. Myers came to the back door and directed Maureen to return to the house. Maureen returned to the porch and Myers shut the screen door behind her. Myers told Pace, "You're done." Pace then sprayed mace through the screen door onto Myers and Maureen. Pace was standing on the cement area just outside the back door at the time.

After Myers was sprayed with the mace, he exited the porch to approach Pace. Pace promptly struck him with a metal club. Myers was unable to recall his precise location when he was first struck with the club, although he believed it occurred in an area just outside the door. Myers was then struck several other times while the two men struggled together in the back yard outside the door. Within a short period of time, Myers retreated towards the house. He opened the screen door to enter, and attempted to shut the wooden door behind him. Pace, however, was in pursuit. He prevented Myers from closing the door by pushing inward on the door with his hands. Myers eventually succeeded in closing the door. He then locked it and placed a telephone call to law enforcement authorities.

Pace was subsequently charged with burglary in the first degree, going armed with intent, and domestic abuse assault. At the close of the evidence by the State at trial, Pace moved for judgment of acquittal on the charge of burglary in the first degree. He claimed insufficient evidence had been presented to show he entered or remained upon an occupied structure. The district court overruled the motion.

Trial counsel for Pace later moved for a mistrial after the prosecutor attempted to cross-examine Pace about his prior assaultive behavior. Defense counsel believed the questioning violated a prior ruling by the district court made in response to a motion in limine. The district court sustained the objection to the prosecutor's questions, but held the motion for mistrial in abeyance. The trial, however, was concluded without a ruling by the trial court on the motion for mistrial. The jury found Pace guilty of burglary in the first degree and going armed with intent.

Pace raises two claims of error on appeal. He asserts he did not commit the crime of burglary in the first degree because there was insufficient evidence to show he entered an occupied structure without a right, license or privilege, or remained on an occupied structure after the right, license or privilege had expired. He acknowledges he entered the driveway, walkway, and area just outside the back door, but claims he was privileged to do so and the areas were outside the definition of an occupied structure. He also asserts he did not inflict any bodily injury while in or upon an occupied structure. Secondly, Pace claims his trial counsel was ineffective for failing to challenge the vagueness of the term "appurtenance" in the statutory definition of "occupied structure" and

by failing to request a ruling on the motion for mistrial.

## II. Standard of Review.

 We review claims of insufficient evidence for errors at law. Iowa R.App. P. 4. We will uphold a finding of guilt if "substantial evidence" supports the verdict. *State v. Schmidt,* 588 N.W.2d 416, 418 (Iowa 1998). "Substantial evidence" is that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State. *Id.* We give consideration to all of the evidence, not just that which supports the verdict, including reasonable inferences which could be derived from all the evidence. *Id.*

 Claims of ineffective assistance of counsel arise from the Sixth Amendment right to counsel. *See State v. Westeen,* 591 N.W.2d 203, 207 (Iowa 1999); U.S. Const. amend. VI; *see also* Iowa Const. art. 1, § 10. We review such constitutional claims de novo. *Westeen,* 591 N.W.2d at 207.

## III. Sufficiency of Evidence.

Burglary is committed under our Iowa statute when:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure....

Iowa Code § 713.1 (1997).

Our legislature has classified burglary by three degrees, depending upon the severity of the circumstances. Burglary in the first degree is committed "if while perpetrating a burglary in or upon an oc-cupied structure in which one or more persons are present," the person, among other circumstances, "intentionally or recklessly inflicts bodily injury on any person." *Id.* § 713.3. Burglary in the second degree is committed, in part, when a burglary is perpetrated "in or upon an occupied structure in which one or more persons are present" but none of the aggravating circumstances of first-degree burglary exist. *Id.* § 713.5. Third-degree burglary generally involves burglary where no persons are present in the occupied structure and no aggravating circumstances occur. *Id.* § 713.6(1). In reviewing the sufficiency of evidence, we review all the evidence in view of the offenses charged.

### A. Sidewalk and Stoop as an Occupied Structure.

At common law, burglary could only be committed in a dwelling house. 3 Charles E. Torcia, Wharton's *Criminal Law* § 325, at 251 (15th ed.1995) (hereinafter "Wharton's"). The crime was considered to be an offense against the security of habitation or occupancy, and was tied to the ancient maxim that "a man's home is his castle." *Id.* §§ 316, 325, at 223, 253. It was not designed to protect property or ownership, rather the notion that people should be able to feel secure in their homes. *Id.* As one court put it:

> "Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime to escape ... [t]he laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety."

*State v. Nible,* 200 Cal.App.3d 838, 844, 247 Cal.Rptr. 396 (1988) (quoting *State v. Lewis,* 274 Cal.App.2d 912, 920, 79 Cal.Rptr. 650 (1969)).

A "dwelling house" at common law included not only the house regularly used for sleeping, but also out-buildings within the curtilage of the home. *See* Wharton's § 326, at 259. The curtilage encompassed the cluster of buildings which were in reasonably close proximity to the dwelling house and closely associated with it. *Id.* The rationale for making buildings located within the curtilage the subject of burglary was derived from the continuing need to protect the occupants of the house when they used nearby buildings as a part of their occupation of the principal dwelling. *Id.* § 326, at 262.

> The dweller might have occasion at night to walk out to his barn to tend to his animals or, if he heard a suspicious noise, he might walk out to the barn to investigate. The danger to the dweller if confronted by an intruder in an out-building is sufficiently comparable to danger of such confrontation in the dwelling house itself to justify extending protection of the law of burglary to out-buildings.

*Id.*

Although the subject of burglary at common law extended to buildings within the curtilage of the dwelling home, the curtilage itself was not protected apart from its relationship to a building. *See* Jerome C. Latimer, *Burglary is for Buildings, or is it? Protected Structures and Conveyances Under Florida's Present Burglary Statute,* 9 Stetson L.Rev. 347, 350–51 (1980). Only buildings in the curtilage of the dwelling home fell within the scope of the burglary offense. *Id.*

▇ Iowa historically followed the common law approach to burglary. Under our original burglary statute, as with common law, only a "dwelling house" could be the subject of the offense. *See* Iowa Code § 2608 (1851). This limitation remained, for the most part, until 1978 when our legislature rewrote the burglary statute, in part, to replace "dwelling house" with "occupied structure." *See* 1976 Iowa Acts ch. 1245, § 1301. More significantly, it subsequently defined "occupied structure" to include

> any building, structure, appurtenances to buildings and structures, land, water, or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value.

Iowa Code § 702.12 (1985). Thus, our legislature not only expanded the burglary statute to include buildings, structures, vehicles, and similar places, but "appurtenances to buildings and structures," as long as the protected place was also "adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the purpose of storage or safekeeping of anything of value." *See id.* § 702.12 (1997). Therefore, our definition of an occupied structure has two prongs. The first describes the type of place that can be the subject of burglary, and the second considers its purpose or use.

In considering the first prong, we observe the term "appurtenants" was principally used at common law to help describe the nexus between the dwelling house and the surrounding buildings that were within the scope of the curtilage. *See* 4 William Blackstone, *Commentaries* 225 (1769) ("and if the barn, stable or warehouse be parcel of the mansion house, though not under the same roof or contiguous, a burglary may be committed therein; for the capital house protects and privileges all its branches and appurtenants, if within the curtilage of the homestall"); 12A C.J.S. *Burglary* § 30 (1980) ("an outhouse is within the curtilage ... if it is parcel of, or appurtenant to, the dwelling and connected therewith...."). Originally, the curtilage referred only to the area surrounding a castle that was encircled by a wall. *United States v. Romano,* 388 F.Supp. 101, 104 n. 4 (E.D.Penn.1975). The buildings within the curtilage, therefore, could be easily

identified. Over time, however, the curtilage rule continued to be applied even though there was no fence around the principal dwelling. Wharton's § 326, at 261–62. Yet, if an out-building was so remote from the dwelling house that a person who broke into it would not be expected to disturb the owner's repose, the building was outside the scope of burglary. *See id.* § 326, at 262; *State v. Jake*, 60 N.C. 471 (1864) (if an owner chooses to place an out-building so far from the dwelling that his repose would unlikely be disturbed by the breaking, the law of burglary provides no protection). On the other hand, the burglary laws protected the outbuildings which were "appurtenant" to the dwelling house because, like the dwelling house, they were places of the owner's repose. Wharton's § 326, at 262; *see State v. Newman*, 313 N.W.2d 484, 486 (Iowa 1981) (the gist of burglary is a trespass against a secure place with the requisite intent).

■ Although the term "appurtenant" may have been used at common law to define the relationship between an outbuilding to the dwelling house, we recognize our legislature has used the term in our present statute as a noun to describe a specific place which may be the subject of burglary. Thus, like a building, structure, vehicle, or similar place, an "appurtenance to a building or structure" may be the subject of burglary under the statute as long as it satisfies the second portion of the definition of an occupied structure.

■ We have previously defined an "appurtenance" broadly as

That which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or easement to land. . . .

*State v. Baker*, 560 N.W.2d 10, 13 (Iowa 1997) (quoting Black's Law Dictionary 103 (6th ed.1990)). A thing is an appurtenance "when it stands in relation of an incident to a principal and is necessarily connected with the use and enjoyment of the latter." *Id.; accord State v. Hill*, 449 N.W.2d 626, 628 (Iowa 1989). The key factor employed in determining if something is an appurtenance is whether it is "connected in use with the principal." *Baker*, 560 N.W.2d at 13.

We have applied these definitions to find a fenced enclosure behind an automobile parts store to be an appurtenance to a building. *Hill*, 449 N.W.2d at 628. More recently, in *Baker*, we concluded a driveway fell within the definition of "appurtenance to a building or structure." We found a driveway was an "appurtenance" because it was closely associated with and connected to buildings and structures, and was built to enhance the use and enjoyment of the building or structure. *Baker*, 560 N.W.2d at 13.

■ Considering our broad definition of "appurtenance," we conclude a step or stoop outside the door of a home, as well as the cement walkway leading to the step, would fall within the definition of an appurtenance to the house. Like the driveway in *Baker*, a step or stoop, as well as the adjoining sidewalk, is easily recognized as a thing connected with the use and enjoyment of the house, and belongs to the house. The fighting question is whether it also qualifies under the second prong of the definition of an occupied structure as a place "adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value."

■ We found this second prong of the definition of an "occupied structure" was satisfied in *Baker* because the driveway in the case was occupied by persons for the purpose of carrying on activities, and was also used for the storage or safekeeping of things of value. *Id.* at 14. We observed driveways are often occupied by persons for numerous types of activities, such as sporting activities, child's play, cookouts, and countless other activities. *Id.* Addi-

tionally, we observed driveways were commonly used to store automobiles, boats, and trailers. *Id.*

In this case, there was no evidence indicating the step or stoop outside the door was occupied by persons for the purpose of carrying on some activity. There was no testimony addressing the issue, and the photographic evidence revealed nothing but a small cement area with a step leading to a door. Unlike *Baker*, we are unable to take judicial notice that the step or stoop would be occupied by persons for the purpose of carrying on some activity. The only apparent purpose of the step or stoop in this case would be to assist persons in entering or exiting the house. Yet, we do not believe this transient action is the type of occupation or activity which gives an appurtenance the protection of an "occupied structure." There are three principal reasons to support this conclusion.

■ First, our legislature did not extend the subject matter of burglary to include all appurtenances to buildings or structures, but only those occupied by reason of an activity. If the legislature intended to include acts such as walking or standing as the type of occupancy and activities within the statute, there would be little need for a second prong of the definition. It is difficult to imagine an appurtenance to a structure that would not fall within the definition of an "occupied structure" if merely walking over or momentarily standing upon an appurtenance was occupancy for the purpose of carrying on an activity. We do not construe statutes so as to render a part of it superfluous, but presume our legislature included every part of the statute for a purpose and intended each part to be given effect. *State v. Graves*, 491 N.W.2d 780, 782 (Iowa 1992).

■ Second, the exclusion of sidewalks and steps from the definition of an "occupied structure" is consistent with the fundamental common law concept of burglary as an offense against security of occupan-

cy. Burglary was never intended to cover all structures, but only those occupied by reason of some activity occurring in the structure. Although our legislature expanded the definition of "occupied structure" beyond a common law "dwelling house" concept, it specifically retained the requirement that the subject matter of burglary be occupied in conjunction with some activity which takes place in the structure. We interpret statutes consistent with common law unless the language of the statute clearly negates the common law. *Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 452 (Iowa 1988).

■ Finally, our restrictive construction of the second prong of the definition of an "occupied structure" is compatible with the constitutional mandates associated with criminal statutes. We are required to construe criminal statutes strictly, and resolve all ambiguities in favor of the accused. *State v. Finchum*, 364 N.W.2d 222, 225 (Iowa 1985). Although the concept of an appurtenance can be broad and imprecise, the second prong of the definition of an "occupied structure" exists to help narrow its parameters. Statutes must not be viewed so broadly that they threaten the constitutional due process prohibitions against vagueness and uncertainty. *State v. Hunter*, 550 N.W.2d 460, 463 (Iowa 1996). Thus, in most instances this second prong will require evidence which would objectively reveal that an activity occurs in or upon the appurtenance which causes persons to occupy it with a sense of security or repose similar to that enjoyed in the principal structure. Thus, outdoor furniture located on a deck or a patio, or a bench located on a porch or stoop, would be indicia of the type of occupancy that could bring an appurtenance into the definition of an occupied structure. *See People v. Thompson*, 114 Mich.App. 302, 319 N.W.2d 568, 569 (1982) (issue of whether a porch with two chairs and a rug constituted a dwelling house was properly left for the jury).

Any other interpretation could lead to unreasonable results. We cannot imagine our legislature intended to make appurtenances such as the sidewalk and steps described in this case the subject of burglary. If this were true, a person who entered a sidewalk or step of a house, without a right, license, or privilege, with the intent to pick a flower from a pot located on the sidewalk or step would commit burglary. *See State v. Hamilton,* 660 So.2d 1038, 1045 (Fla.1995). Similarly, a person who entered to take a basketball left outside on a sidewalk of a house would be guilty of burglary. Legislative enactments presume a reasonable result was intended, and we interpret criminal statutes to avoid impractical results. *See State v. Bessenecker,* 404 N.W.2d 134, 137 (Iowa 1987).

Under the facts of this case, we conclude the sidewalk and step or stoop to the door of the house were not "occupied structures" under the statute. Consequently, Pace did not commit burglary when he entered the sidewalk or stoop.

### B. Driveway as an Occupied Structure.

Although we determined in *Baker* that a driveway satisfied the definition of "occupied structure," we are not prepared to extend *Baker* beyond the specific circumstances of that case. In *Baker,* we were asked to determine whether the burglary of a house was elevated to first-degree burglary under section 713.3 when the perpetrator attempted to flee from the house and garage and inflicted bodily injury on the homeowner while she was in the driveway of the home. The homeowner had driven her automobile onto the driveway of the home while the burglary was in progress. While we found a driveway to be an occupied structure, our analysis did not include the same consideration as presented in this case.

The same analysis we employed in our determination whether a sidewalk, stoop or other similar appurtenance constitutes an occupied structure should be followed to determine whether a driveway can be an occupied structure. Thus, we must look to see if there was evidence to satisfy one of the alternative tests of the second prong of the "occupied structure" definition. *See* Iowa Code § 702.12. In this case, this requires us to first consider any evidence indicating whether the driveway was occupied for the purpose of carrying on an activity. There is no claim it was adapted for the overnight accommodation of persons.

■ As with the sidewalk and stoop, there was no evidence in this case indicating any occupancy of the driveway for the purpose of carrying on an activity. Instead, the evidence revealed the driveway was merely an area of gravel leading to the house and garage.

Nevertheless, the State points to the testimony indicating Myers occasionally kept farm vehicles on the gravel driveway. It claims this constituted sufficient evidence the driveway was an occupied structure under the alternative definition of "adapted ... for the storage or safekeeping of anything of value." *See id.*

The word "adapt" means to make fit, often by modification. *See* Merriam Webster's Collegiate Dictionary 13 (10th ed.1998). Additionally, the word "storage" connotes some degree of permanency, not transience. *See State v. Gargiulo,* 103 N.J.Super. 140, 246 A.2d 738, 740 (1968); *State v. Breidenbach,* 5 Ohio App.2d 52, 213 N.E.2d 745, 746 (1964). We believe our legislature selected these words to impart the same considerations we recognized in our determination that the sidewalk and stoop were not occupied structures. It confirms burglary is an offense against the security and repose expected in certain places.

In this case there was no evidence the driveway was made or modified as a place for the storage or safekeeping of valuable property. It was merely a lane from the street to the house and detached garage.

The occasional presence of a vehicle on a driveway would not satisfy the requirement that the driveway was adapted for the storage or safekeeping of property. We find no evidence in the record to show the driveway constituted an occupied structure.

### C. Other Evidence of Burglary.

 We consider all the evidence in the case and uphold a conviction if there is substantial evidence in the record to support it. In considering all the evidence presented in the case, we find the jury could have found Pace committed burglary beyond a reasonable doubt when he pushed in on the wooden door of the house after Myers retreated into the house and struggled to close the door. The house clearly met the definition of an "occupied structure." Moreover, entry includes breaking of the plane of the threshold of a house. *State v. Perry*, 165 Iowa 215, 218, 145 N.W. 56, 58 (1914); *see also State v. Wise*, 25 Cal.App.4th 339, 345, 30 Cal. Rptr.2d 413 (1994) (discussing the "boundary approach" wherein entry into the interior airspace of the building which separates it from the outdoors is sufficient for burglarious entry). Furthermore, all the surrounding circumstances clearly support a finding that Pace had no right, license, or privilege to enter the house and possessed an intent to commit an assault in the house. All of the definitional elements of burglary were satisfied when Pace pushed on the wooden door to the house. The remaining question is whether Pace also committed first-degree burglary.

1. The State did not argue spraying mace through the screen door constituted a breaking or entering under the burglary statute. *See State v. Nichols*, 572 N.W.2d 163, 164 (Iowa App.1997) (entry with an instrument controlled by the burglar); *see also* Vol. II, Iowa Crim. Jury Instructions 1300.12 (1993) ("'to enter' means entering a structure with any part of the body, or with an instrument intended to be used to commit a felony, assault or theft"); *People v. Moore*, 31 Cal.

### D. First–Degree Burglary.

 Under the instructions given by the court in this case, the jury was permitted to find Pace guilty of burglary in the first degree if he intentionally or recklessly inflicted bodily injury on Myers or Maureen during the burglary. The evidence revealed the jury could have found Pace inflicted bodily injury on two occasions. He first inflicted bodily injury on Myers and Maureen when he sprayed mace into their eyes while he stood outside the screen door.[1] He also inflicted bodily injury on Myers when he struck him with a club outside the house. Thus, we must determine whether these circumstances constitute sufficient evidence to elevate the burglary into a first-degree offense.

 We have broadly defined perpetration to apply to acts connected with the commission of a crime, including acts occurring after the crime. *State v. Conner*, 241 N.W.2d 447, 463–64 (Iowa 1976). Yet, our statute defining first-degree burglary specifically requires the defendant to inflict the injury "while perpetrating a burglary *in or upon an occupied structure* in which one or more persons are present." Iowa Code § 713.3 (emphasis added). We have previously indicated that it is what occurs after entry which elevates burglary into a first-degree offense. *Franklin*, 368 N.W.2d at 720. Conversely, matters occurring prior to entry cannot be used to elevate the offense to a first degree. In this case, the house was the only occupied structure Pace entered in which persons were present. He did this when he pushed on the door. Yet, while perpetrating the burglary, he did not inflict any bodily injury to persons in the house.[2]

App.4th 489, 37 Cal.Rptr.2d 104, 105 (1994) (use of tire iron to open door deemed entry). Therefore, we do not address the question.

2. We make no determination whether the possession of a dangerous weapon component was met. *See* Iowa Code § 713.3. Pace was not prosecuted under this theory. He was only prosecuted on the theory that he inflicted bodily injury while perpetrating the burglary in or upon an occupied structure in which one or more persons were present.

The evidence showed the bodily injury was inflicted *before* the burglary occurred. As a matter of law, Pace did not commit burglary in the first degree based upon the infliction of bodily injury component of section 713.3.

Although we conclude there was sufficient evidence to support a finding of a burglary, there was insufficient evidence to support a verdict of burglary in the first degree. We therefore remand the case to the district court to enter judgment on the lesser included offense of burglary in the second degree. *See State v. Lampman,* 342 N.W.2d 77, 81 (Iowa App.1983).

## IV. Ineffective Assistance of Counsel.

■■■ Pace claims he was denied effective assistance of counsel in violation of his Sixth Amendment right to counsel under the United States Constitution and article 1, section 10 of the Iowa Constitution. First, Pace claims his trial counsel failed to challenge the constitutionality of "appurtenance" as used in Iowa Code section 702.12 as vague and overbroad. Second,· Pace claims his trial counsel failed to request a ruling on his motion for mistrial.

■■■ In order to prevail upon a claim of ineffective assistance, defendant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Westeen,* 591 N.W.2d at 207. Such claims are generally preserved for post-conviction proceedings. *Id.* However, they may be resolved on direct appeal where, as here, the record is adequate. *Id.* Furthermore, we may bypass the first prong of the test if no prejudice resulted. A defendant establishes prejudice by showing "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Hopkins,* 576 N.W.2d 374, 378 (Iowa 1998) (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984)).

Because we find sufficient evidence of a burglary to the house, Pace suffered no prejudice by the failure of his counsel to challenge the constitutionality of the term "appurtenance." Therefore, we proceed to the second claim.

■■■ Although the record reveals the prosecutor attempted to submit evidence of Pace's prior bad acts, defense counsel objected to each attempt and the trial judge sustained the objections with admonitions to the jury. Generally, when improper evidence has been promptly stricken and the jury admonished to disregard it, no error occurs. *State v. Jackson,* 587 N.W.2d 764, 766 (Iowa 1998). As we noted in *Jackson:*

> Ordinarily the striking of improper testimony cures any error. Only in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained, despite its exclusion, and influenced the jury is the defendant denied a fair trial and entitled to a [mistrial].

*Id.* (quoting *State v. Peterson,* 189 N.W.2d 891, 896 (Iowa 1971) (citations omitted)). This principle has been reaffirmed in *State v. McGonigle,* 401 N.W.2d 39, 43 (Iowa 1987), and *State v. Brotherton,* 384 N.W.2d 375, 381 (Iowa 1986).

■■■ Furthermore, a prosecutor's misconduct will not· warrant a new trial unless the conduct was "so prejudicial as to deprive the defendant of a fair trial." *State v. Anderson,* 448 N.W.2d 32, 33 (Iowa 1989) (quoting *State v. Lyons,* 210 N.W.2d 543, 549 (Iowa 1973)); *see also State v. Harless,* 249 Iowa 530, 536, 86 N.W.2d 210, 213–14 (1957), *cert. denied,* 357 U.S. 908, 78 S.Ct. 1154, 2 L.Ed.2d 1158 (1958). It is not the prosecutor's misconduct which entitles a defendant to a new trial, but rather the resulting prejudice which prevents the defendant from obtaining a fair trial. *Anderson,* 448 N.W.2d at 33. In determining whether the prosecutor's misconduct resulted in an unfair trial for the defendant, we "consider the entire trial, including the trial court's admonition

to the jury, number of incidents, and strength of the evidence." *Id.; see State v. Greene*, 592 N.W.2d 24, 32 (Iowa 1999). We conclude the outcome of the trial would not have been different had the trial court entered a ruling on the motion for mistrial. The misconduct by the prosecutor did not warrant a mistrial. Pace did not suffer any prejudice by the failure of his counsel to request a ruling on the motion for mistrial. Therefore, Pace's second claim of ineffective assistance of counsel must also fail.

## V. Conclusion.

We reverse the entry of judgment and sentence for burglary in the first degree and remand for entry of judgment and sentence for burglary in the second degree. We affirm the judgment for going armed with intent.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**