**IN THE COURT OF APPEALS OF IOWA**

No. 23-1650
Filed December 18, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ZEBULON PAUL DAWSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Robert J. Richter,

Judge.


        Zebulon Paul Dawson appeals his conviction and sentence after a jury

found him guilty of assault causing bodily injury.  **AFFIRMED.**


        Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines,

for appellant.

        Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney

General, for appellee.


        Considered by Tabor, P.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

Zebulon Paul Dawson appeals his conviction and sentence after a jury found him guilty of assault causing bodily injury. He challenges the sufficiency and weight of the evidence supporting his conviction. He also contends the district court erred by denying his motion for new trial based on improperly admitted hearsay evidence and argues the district court abused its sentencing discretion.

Following our review, we find substantial evidence supports the jury's verdict, which is not contrary to the weight of the evidence. Because the district court did not err by denying Dawson a new trial or abuse its sentencing discretion, we affirm Dawson's conviction and sentence.

**I. Background Facts.**

In May 2023, Dawson and his wife called law enforcement to report an incident that occurred with their fourteen-year-old son. A police officer arrived at the home where Dawson, his wife, and their son were waiting in the driveway. Officer Slight noticed the son had "bruising or [a] black mark to the right side or scratch on [the] left side of his face by his eye."

Officer Slight's body camera recorded his conversation with Dawson, who explained that the night before, he and his son were "roughhousing-slash-disciplining." Dawson described that he pinned his son down and slapped him, causing the injury to the left side of his face. The officer said, "My report says it was an assault. So it wasn't like a fight, you guys were just horsing around and . . . ." Dawson explained that his son was upset over punishment for a rude interaction with an adult and called Dawson and his wife "fricking dicks," which made Dawson "kinda mad and offended." Dawson was also concerned that his

son thought he could have fought the man and wanted his son to understand that an adult, no matter how old, would be able to "whoop [his son's] ass." Dawson stated he got on top of his son and they were wrestling around. He also stated that he and his son have "this . . . poor choice thing where I've been kind of lightly smacking him quickly." Dawson admitted that he held his son down and said, "Are you ready? Here it comes," before striking him. Dawson then stated, "I think I hit in the wrong spot and too hard" because he did not intend to leave a mark.

The officer examined the son and noticed what appeared to be bruising to the inside of his left arm and a mark on his upper chest. He and another officer also interviewed Dawson's daughter, who witnessed the altercation. They then arrested Dawson for assault causing bodily injury.

At Dawson's trial, the State introduced the body-camera video into evidence. The jury found Dawson guilty of assault causing bodily injury. The district court sentenced Dawson to 360 days in jail, suspending all but 180 days, and placed Dawson on probation for two years.

## II. Sufficiency of the Evidence.

Dawson first contends there is insufficient evidence showing that he committed assault causing bodily injury. We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). The question is whether there is sufficient evidence to "convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). In answering this question, we view the evidence and any inferences drawn from it in the light most favorable to the State. *Id.* "The evidence

must at least raise a fair inference of guilt as to each essential element of the crime." *Id.* at 516–17.

The district court instructed the jury that to find Dawson guilty of assault causing injury, the State had to prove:

> 1. On or about the 2nd day of May, 2023, [Dawson]:
> a. did an act which was intended to cause pain and injury to [his son] or
> b. did an act which was intended to result in physical contact which was insulting or offensive to [his son] or
> c. did an act which was intended to place [his son] in fear of an immediate physical contact which would have been painful, injurious, insulting, or offensive.
> It is not necessary for all jurors to agree to just (a), (b), or (c) above. It is only necessary that all jurors agree to at least one of these three alternatives as to Element No. 1.
> 2. [Dawson] had the apparent ability to do the act . . . .
> 3. [Dawson]'s act caused a bodily injury to [his son] . . . .

Only the first element is disputed.

Viewed in the light most favorable to the State, substantial evidence supports a finding that Dawson intended to make physical contact that was either painful, injurious, insulting, or offensive to his son. Dawson told the officer that his son believed he could fight an adult. Dawson responded by telling his son, "Dude, you don't seem to understand. An adult, no matter how old he is, he's going to whoop your ass." To illustrate his point, Dawson pinned his son to the floor and said, "Are you ready? Here it comes," before striking his son in the face. Although Dawson claims he did not intend to cause pain or leave a mark, Dawson struck his son's face to show that he would be outmatched in a fight with an adult. A reasonable juror could disbelieve Dawson's claim that he did not intend to cause pain or injury. A reasonable juror could also believe that while Dawson did not intend to cause the injury he inflicted, he intended to cause some pain or injury.

Finally, a reasonable juror could infer that Dawson did not intend to cause pain or injury but intended to teach his son a lesson through insulting or offensive contact. Each of these conclusions would suffice the first element of the charge.

Dawson also claims that his actions were justified as corporal punishment.

> Under Iowa law, parents have a right to inflict corporal punishment on their child, but that right is restricted by moderation and reasonableness. Corporal punishment must be corrective rather than abusive in character. This determination varies with the age, physical condition, and other characteristics of a child as well as with the gravity of the child's misconduct.

*State v. Schooley*, ___ N.W.2d ___, ___, 2024 WL 4715062, at *3 (Iowa 2024) (cleaned up). "When a parent's conduct surpasses the line of reasonable correction, his or her conduct becomes criminal." *State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018) (cleaned up).

Conflicting evidence was presented about Dawson's reasons for hitting his son. Dawson characterized his behavior as both roughhousing and disciplining. Although he notes there is no evidence that his son did not consent to the roughhousing, no evidence shows that he did. Dawson also claims there is no evidence that he lost control of his temper. But Dawson told the officer that the injury occurred after he got "mad and offended" because his son called him and his mother "freaking dicks." But "[e]vidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021) (citation omitted). We leave the resolution of conflicting evidence and the inferences drawn from it to the jury. *See, e.g.*, *State v. Martin*, 274 N.W.2d 348, 349 (Iowa 1979)

("When the testimony is disputed or . . . when different inferences may be drawn from it, the question is one of fact for the jury."). Viewed in the light most favorable to the State, substantial evidence supports the verdict.

Finally, Dawson contests the evidence that he committed the offense in Iowa. Dawson lives in Dubuque, which borders Wisconsin and Illinois. He argues that the State failed to present evidence that the assault occurred in his home. But during his interview with law enforcement, Dawson explains that his son called he and his wife "freaking dicks" before walking to his bed, "which is a few feet from the living room." Dawson explains that he then "got on top of him" and they "were kind of wrestling around." The evidence supports a finding that the assault occurred in Dawson's home, which is in Iowa.

### III. Weight of the Evidence.

Dawson also contends the district court erred by denying his motion for new trial because the verdict is contrary to the weight of the evidence. The court is allowed to consider witness credibility under the weight-of-the-evidence standard. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). If a greater amount of credible evidence supports the alternative verdict rather than the one the jury rendered, the court may grant a new trial. *Id.* Because "a motion for new trial brought under the weight-of-the-evidence standard essentially concedes the evidence adequately supports the jury verdict," the court may grant a new trial based on the weight of the evidence "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.*

Using the weight-of-the-evidence standard, Dawson again argues his actions were justified as corporal punishment. The State presented testimony from

the two responding officers, the body camera video from the interview with Dawson outside the home, and photographs of his son's injuries. Dawson claims there is no evidence disputing his version of events or suggesting he was not credible. But as noted in discussing the weight of the evidence, Dawson made conflicting statements to law enforcement from which reasonable jurors could reach different conclusions.

At the sentencing hearing, the district court recounted the evidence against Dawson. It noted that the jury watched the body camera video and heard Dawson's explanation of events, during which Dawson "basically admitted to every element of the crime with the exception of specific intent." The court also noted that it instructed the jury about the difficulty of getting direct evidence on the issue of specific intent and allowing the jury to conclude that Dawson intended the natural result of his actions.

> The defendant's statement was that he was trying to teach his child a lesson about how adults are always stronger. And the jury could have considered that in order to have the child understand that, he did intend to hit him hard enough to make him feel it and understand that he could hurt the child. And so I don't think it's contrary to the weight of the evidence.

The court then recounted the jury instruction on corporal punishment, which allowed the jury to make a determination of whether Dawson was implementing corporal punishment after considering the type of behavior for which Dawson was disciplining his son and how much force was used. It also noted that the jury viewed photographs of the child's injuries. The court found that the jury's determination that Dawson's actions were intentional and not corporal punishment allowed by law was not contrary to the weight of the evidence.

As to the issue on specific intent, as I mentioned earlier, intent is something that is not—is seldom capable of direct proof. So the fact finders are able to make that decision. They've looked at the photographs and also heard the defendant's version of events. And they would have easily concluded that it was an intentional act to cause pain or injury, to have contact that was—that was offensive, or to place the child in fear of contact that would be offensive.

The district court correctly applied the weight-of-the-evidence standard. Finding no error in its determination that the jury's verdict is not contrary to the weight of the evidence, we affirm the denial of Dawson's motion for new trial.

**IV. Hearsay.**

Dawson also contends he is entitled to a new trial based on improper hearsay evidence. He claims that the prosecutor introduced "backdoor hearsay" during trial. Backdoor hearsay is when "the question and answer d[o] not produce hearsay 'in the classic or textbook sense,' [but] the questioning was nevertheless designed to circumvent the hearsay rule and present the jury with information from unsworn, out-of-court sources." *State v. Huser*, 894 N.W.2d 472, 497 (Iowa 2017) (citation omitted).

Dawson alleges the prosecutor introduced backdoor hearsay twice during trial by implying that the two responding officers arrested Dawson after speaking with his son and daughter, which improperly suggests that the children made incriminating statements. The prosecutor asked one officer about interviewing Dawson's son:

Q. Officer, when you were inside the trailer, did you interview [Dawson's son]? A. Yes, I did.
Q. Okay. And did you take a statement from him? A. I did.
Q. After talking to [Dawson's son], what did you do next? A. I exited the trailer and placed Mr. Dawson under arrest for assault with injury.

Dawson's attorney objected that "[t]he clear implication is that the child said something inside that sounded like dad hit him or something like that." Counsel did not move for a mistrial but asked the court to strike the officer's answer and give a curative jury instruction. After a break, the court addressed the jury:

> Prior to us taking a break, there was an objection made, and the parties have now agreed that I can give you a curative instruction is what it's called. The order of the questions of the officer was asked by the prosecutor was 1) whether he interviewed the child, and he said yes, and then he was asked what he did next, and the officer said he arrested the defendant.
> What the child said to the officer is inadmissible hearsay. It's not admissible. And merely the fact that the officer then went and arrested the defendant following that interview should not be used as an implication by you as jurors to determine what the child did or did not say during that interview.
> It is the order of how the events occurred, but you should not try to guess at what was said. That's inadmissible hearsay so do not consider that as part of your ruling and your verdict in this case.

Later, the prosecutor asked the other officer about interviewing Dawson's daughter, asking about her demeanor and body language but not the substance of what she said. The prosecutor then asked the officer what his responsibilities were after concluding the interview. The officer answered, "After we were done interviewing [the daughter], we went out back to the living room area of the trailer . . . and then the decision to arrest [Dawson] was made." Dawson's attorney made a hearsay objection. The court then addressed the jury:

> Ladies and gentlemen, I gave you a prior curative instruction that the attorneys talked about, and I talked with you when you first came in here, the same applies to this situation. What [Dawson's daughter] told this officer is inadmissible hearsay. And just because the order of events was that an arrest was made after the interview, you shouldn't use that to be an implication of any kind about what the child . . . did or did not say to this officer because that is inadmissible. Don't try to guess on it. It shouldn't be a basis for your verdict in this case.

After trial, Dawson moved for a new trial. He alleged that he was denied his right to an impartial jury based on the State's introduction of backdoor hearsay. In denying the motion, the court distinguished *State v. Halfhill*, No. 19-2093, 2021 WL 1400761, at *4 (Iowa Ct. App. Apr. 14, 2021), in which this court reversed a criminal conviction after finding prejudicial hearsay was improperly admitted. In *Halfhill*, we noted that "[b]ecause the district court failed to recognize the issue of backdoor hearsay created by the question and answer, the court did not take any curative actions." 2021 WL 1400761, at *3. In contrast, the district court stated:

> I gave a curative instruction. The parties agreed to what I would say. I gave it immediately after the objection was made after we had a hearing to determine what should be done. I determined that one curative instruction was sufficient, and also that the harm, if any, did not rise to the level of the need to grant a new trial.

We find no error in denying Dawson's motion for new trial based on the claim of backdoor hearsay. Our supreme court has consistently recognized that a curative instruction usually "enable[s] the jury to complete its task without being improperly influenced by otherwise prejudicial testimony." *State v. Williamson*, 570 N.W.2d 770, 771 (Iowa 1997). "Generally, when improper evidence has been promptly stricken and the jury admonished to disregard it, no error occurs." *State v. Pace*, 602 N.W.2d 764, 774 (Iowa 1999). The supreme court has identified important considerations to aid in determining whether cautionary instructions are adequate to mitigate the prejudicial impact of inadmissible evidence. *State v. Plain*, 898 N.W.2d 801, 815 (Iowa 2017), *modified on other grounds by State v. Lilly*, 930 N.W.2d 293 (Iowa 2019). First, we consider "whether the defendant can combat the evidence without compounding the prejudice." *Id.* (cleaned up). Second, we consider "how extensive the evidence is and the promptness with

which it was addressed." *Id.* Finally, we consider the strength of the evidence establishing the defendant's guilt, as the strength of the evidence lessens the prejudicial effect of the challenged testimony. *Id.*

Assuming without deciding that the evidence at issue is backdoor hearsay, we agree that striking the testimony and promptly giving a curative instruction sufficed to mitigate any prejudicial impact it may have had. The evidence of Dawson's guilt is strong, especially when weighed against the mere inference of damaging evidence. The district court did not err in denying Dawson's motion for new trial on this basis.

**V. Sentence.**

Finally, Dawson challenges the sentence imposed by the district court. The district court sentenced Dawson to 360 days in jail. Although Dawson asked the court to suspend all but thirty days of his sentence, the sentencing court suspended all but 180 days.

Because Dawson's sentence falls within the statutory limit, there is "a strong presumption in its favor." *State v. Damme*, 944 N.W.2d 98, 105–06 (Iowa 2020). We only overturn it if the court abused its discretion or considered inappropriate matters. *Id.* at 106. The sentencing court abuses its discretion if it

> fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

*State v. Majors*, 940 N.W.2d 372, 385 (Iowa 2020) (citation omitted). Dawson does not allege that the district court considered an improper sentencing factor. Instead,

he emphasizes mitigating factors in arguing for a shorter jail sentence.

At the sentencing hearing, the court heard from Dawson's children, an investigator with the Iowa Department of Health and Human Services, and letters of support submitted on Dawson's behalf. It considered the nature and circumstances of the crime, the need to protect the public, and prior intervention by the Iowa Department of Health and Human Services after it investigated at least six other allegations that Dawson physically abused his children. It also cited Dawson's age, his family situation, his employment, and the impact his sentence would have on his family and employment. Finally, the court considered "the need for rehabilitation, deterrence, the nature of the charge, your criminal history, and harm to any victim." It concluded by stating:

> . . . I don't think that the recommendation from the State was really out of line given the criminal history, the facts of this case, the harm that was caused. But what saved you here is that I think you were sincere in your remorse and that you want to change and all the letters that were written in support for you and the fact you do support your family. That kept you from doing the entire one year. It wasn't like I didn't consider those. I did.
>
> . . . .
>
> But the nature of this is troubling, and so that's why I imposed the sentence I did.

The district court considered the appropriate factors in imposing Dawson's sentence within the statutory limit. Because it did not abuse its sentencing discretion, we affirm Dawson's sentence.

**AFFIRMED.**