# IN THE SUPREME COURT OF IOWA

No. 13–0618

Filed April 10, 2015

**STATE OF IOWA,**

Appellee,

vs.

**DAVID HOWARD ROONEY,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Richard H. Davidson, Judge.

The defendant seeks further review of a court of appeals decision affirming his conviction of third-degree burglary. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Thomas G. Nelson, Assistant County Attorney, for appellee.

**APPEL, Justice.**

In this appeal, we consider whether the State offered sufficient evidence to support a third-degree burglary conviction in which the allegedly burglarized structure was a soon-to-be-demolished, dilapidated house and the defendant entered the house to obtain scrap metal. A jury convicted the defendant and the court of appeals affirmed the conviction. We granted further review. For the reasons expressed below, we reverse the decision of the court of appeals related to the sufficiency-of-the-evidence claim, reverse the judgment of the district court, and remanded the matter for dismissal of the charge.

## I. Factual Background and Proceedings.

The State charged David Rooney with burglary in the third degree under Iowa Code sections 713.1 and 713.6A(1) (2011). According to the trial information, on November 4, 2012, Rooney entered an occupied structure in Council Bluffs, having no right, license, or privilege to do so, with the intent to commit a theft. Rooney pled not guilty and the matter proceeded to jury trial. Based on the evidence presented, a reasonable jury could have found the following facts.

The structure located at 233 South Fourth Street in Council Bluffs has not been used as a residence since 2002. The city had owned the property since 2007. The structure was a house built in 1890 that the city hoped could be preserved due to its historic value.

A few developers looked at the property, but none wanted to rehabilitate it. The house itself was boarded up, but over the years was broken into several times, and on several occasions, the city hired workers to secure the site after apparent break-ins. The city gave permission to the Council Bluffs Historic Alliance, Preserve Council Bluffs, and Habitat for Humanity of Council Bluffs to enter the property

and remove historic features from the home if they wanted, including carpentry and the fireplace mantel. None of these organizations, however, removed anything from the house before it was demolished. Additionally, a neighbor and her husband had run a few people out of the property in the months prior to the alleged burglary.

By September 2012, the city had decided it would demolish the property. After a bidding process, the city awarded a notice of demolition on October 10. The notice gave the contractor authorization to tear down the house as of that date. While the contractor brought bulldozers to the property, demolition did not occur until November 8.

On November 4, four days prior to demolition, a Council Bluffs firefighter observed two persons loading a radiator from the house onto a pickup truck with a homemade bed. The truck was backed up to the front door of the house. A neighbor also saw two men load metal registers onto a flatbed truck. Investigator Justin James entered the property about two hours later in the day after a fire was reported and extinguished. At that time, the house was in disrepair. The insulation was down, walls were exposed, drywall had been punctured, wires were hanging down, pipes were disconnected, and there was no electricity. Investigator James observed that "possibly at one time there had been transients living in it."

The condition of the house indicated that someone had attempted to remove several wires, basically a stripping of copper, and all but one cast-iron radiator had been removed. Copper is valued at $3 per pound and cast iron is worth about $200 per ton. Plywood had been ripped off the back door and the front door was wide open.

Fire investigators ultimate found a small truck meeting the description of the vehicle that had been on the scene that day at a

residence in Council Bluffs. Investigators found two persons at the residence, one of whom was Rooney. Investigator James testified that, by his answers, Rooney implied he was with another individual that day scrapping metal from the property. The other individual admitted being at the property that day scrapping metal. Rooney further admitted that he did not have permission to be on the property and did not have permission to take any property or metal.

At the close of the State's evidence and again at the close of all evidence, Rooney moved for a judgment of acquittal on grounds that the State failed to establish the structure was an occupied structure under Iowa Code section 702.12 or that Rooney had entered the structure. The district court denied the motions.

Prior to submission of the case to the jury, the trial court crafted its jury instructions. Instruction No. 14, the marshalling instruction, required the State to prove the house was an occupied structure in order to convict Rooney of burglary in the third degree. Instruction No. 16 instructed the jury regarding what qualified as an occupied structure. Instruction No. 16 provided:

> A building or structure is an "occupied structure" if it:
>
> 1. Is adapted for overnight accommodation of persons; or
>
> 2. Is used for the storage or safekeeping of anything of value unless it is too small or not designed to allow a person to physically enter it.
>
> A building or structure is an "occupied structure" whether or not a person is actually present.

The jury returned a guilty verdict. Rooney appealed. He raised a sufficiency-of-the-evidence argument concerning the jury's conclusion that he entered an occupied structure. Additionally, he argued the district court erred in submitting the adapted-for-overnight-

accommodation and the used-for-the-storage-or-safekeeping-of-anything-of-value alternatives defining occupied structure to the jury. Finally, he claimed the district court erred in overruling his motion for mistrial based on alleged prosecutorial misconduct during closing argument. The court of appeals affirmed Rooney's conviction. Rooney filed an application for further review, reprising his original claims on appeal, which we granted.

"On further review, we have the discretion to review all or some of the issues raised on appeal or in the application for further review." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). Here, we choose only to review the sufficiency-of-the-evidence claim. We let the court of appeals' affirmance of the district court's order overruling Rooney's motion for mistrial based on alleged prosecutorial misconduct stand as the final decision of this court. *See id.*

## II. Standard of Review.

We review sufficiency-of-evidence claims for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In reviewing the evidence, we view the evidence in the light most favorable to the State. *State v. Pace*, 602 N.W.2d 764, 768 (Iowa 1999). "[W]e will uphold a verdict if substantial evidence supports it." *Sanford*, 814 N.W.2d at 615 (internal quotation marks omitted). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.*

## III. Discussion.

**A. Overview of the Crime of Burglary.** At common law, burglary was the breaking and entering of a dwelling house of another, at night, with the intent to commit a felony. Common law burglary was an offense

against the security of habitation or occupancy rather than against ownership of property. *See* 4 William Blackstone, *Commentaries on the Laws of England* 223 (1st ed. 1723–1780), *available at* http://avalon.law. yale.edu/18th_century/blackstone_bk4ch16.asp (historical principle underlying the law of burglary is the protection of the right of habitation); *see also Sanford*, 814 N.W.2d at 617–18 (citing 3 Charles E. Torcia, *Wharton's Criminal Law* § 331, at 302 (15th ed. 1995); 13 Am. Jur. 2d *Burglary* § 3, at 219 (2009)). In this respect, the crime of burglary historically has been distinct from theft statutes, which protect ownership interests. *See Pace*, 602 N.W.2d at 768; *see also Sanford*, 814 N.W.2d at 618 (noting "[t]he deterrence of the trespass and the crime intended to be committed within [the structure] is of secondary importance" (internal quotation marks omitted)).

At first, our statutory crime of burglary tracked the common law. *See* Iowa Code § 2608 (1851) (defining burglary as breaking and entering "any dwelling house in the night time with intent to commit the crime of murder, rape, robbery, larceny, or any other felony; or after having entered with such intent break any such dwelling house in the night time, any person being then lawfully therein"); *State v. Jones*, 10 Iowa 206, 208 (1859). More recently, however, the Iowa legislature has expanded the scope of the crime of burglary beyond its common law parameters.

Of particular importance to this case, in 1978 the Iowa legislature replaced the term "dwelling house" with the more expansive term "occupied structure." *See* 1976 Iowa Acts ch. 1245, ch. 1, § 1301 (codified at Iowa Code § 713.1 (1979)); *see also Pace*, 602 N.W.2d at 769 (noting our "legislature rewrote the burglary statute, in part, to replace 'dwelling house' with 'occupied structure' "). *Compare* Iowa Code § 708.1

(1977) (defining punishment for burglary when "any person break and enter any dwelling house in the nighttime, with intent to commit any public offense; or, after having entered with such intent, break any such dwelling house in the nighttime, he shall be guilty of burglary"), *with* Iowa Code § 713.1 (1979) (defining burglary as "[a]ny person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure"), *and id.* § 702.12 (defining occupied structure as "any building, structure, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value"). As was observed at the time, the term significantly expanded the reach of the burglary statute. *See* 4 John L. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law and Procedure* § 293, at 76 (1979) (noting "[t]he term occupied structure, includes anything which would be a dwelling, and much more"). Iowa law currently defines occupied structure as

> any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value.

Iowa Code § 702.12 (2011).

While the legislature has expanded the scope of burglary, it has also developed different degrees of burglary with graduated criminal penalties. Burglary in the first degree requires that a person be present

in the structure and one of four circumstances apply. *Id.* § 713.3.[1] Burglary in the first degree is a class "B" felony and is punishable by a maximum sentence of twenty-five years. *Id.* § 713.3(2); *id.* § 902.9(2). Burglary in the second degree occurs under one of two alternatives:

> *a.* While perpetrating a burglary in or upon an occupied structure in which no persons are present, the person has possession of an explosive or incendiary device or material, or a dangerous weapon, or a bodily injury results to any person.

> *b.* While perpetrating a burglary in or upon an occupied structure in which one or more persons are present, the person does not have possession of an explosive or incendiary device or material, nor a dangerous weapon, and no bodily injury is caused to any person.

Iowa Code § 713.5(1)(*a*)–(*b*). Burglary in the second degree is a class "C" felony and is punishable by a maximum sentence of ten years. *Id.* § 713.5(2); *id.* § 902.9(4). Any burglary that is not first or second-degree burglary is third-degree burglary. Iowa Code § 713.6A(1). Burglary in the third degree is a class "D" felony, punishable by a maximum sentence of five years. *Id.* § 713.6A(1); *id.* § 902.9(4).

Our leading case interpreting the legislature's expanded approach to burglary is *Pace*. In *Pace*, we considered whether there was sufficient evidence to support a burglary conviction when the defendant sprayed

---

[1]The four circumstances as stated in the Code are:

> *a.* The person has possession of an explosive or incendiary device or material.

> *b.* The person has possession of a dangerous weapon.

> *c.* The person intentionally or recklessly inflicts bodily injury on any person.

> *d.* The person performs or participates in a sex act with any person which would constitute sexual abuse under section 709.1.

Iowa Code § 713.3(1)(*a*)–(*d*).

mace through a screen door upon two occupants and attacked one of the occupants with a metal club while standing on a concrete area just outside the back door. 602 N.W.2d at 767. The defendant also prevented the occupants from closing the door of the home by pushing inward on the door with his hands. *Id.* Eventually, the occupants successfully closed the door, locked it, and called the police. *Id.* The defendant was subsequently charged with burglary in the first degree. *Id.*

In *Pace*, we recognized that the legislature had broadened the scope of burglary beyond the common law crime. *Id.* at 768–69. Nonetheless, we emphasized two interpretive principles applied in construing the burglary statute. First, we recognized we are obligated to "interpret statutes consistent with common law unless the language of the statute clearly negates the common law." *Id.* at 771. Second, we recognized our constitutional obligation to construe criminal statutes strictly. *Id.*

Turning to the burglary statute, the *Pace* court recognized that it contained two prongs. *Id.* at 769. The first prong related to the type of place that can be the subject of burglary. *Id.* The *Pace* court recognized that the legislature had expanded the places covered by burglary when it rewrote the burglary statute, compared to the common law definition, by including not only buildings, structures, vehicles, and similar places but also " 'appurtenances to buildings and structures.' " *See id.* (quoting Iowa Code § 702.12 (1997)). The court noted that although the types of places covered by the statute were expanded, the legislature still required that the protected place have a purpose or use for carrying on certain activities. *Id.* at 769–70.

In *Pace*, the court determined the step or stoop outside the back door and the cement walkway leading up to the step would be an appurtenance under the burglary statute. *Id.* at 770. As a result, the first prong related to place had been satisfied. *Id.* We next determined whether the second prong of the definition of an occupied structure applied, namely, whether the place was "adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." *Id.* (internal quotation marks omitted).

With respect to the concrete stoop and sidewalk leading up to the house, we concluded the activity prong of the burglary statute had not been met. *Id.* at 771. We reached this conclusion for three reasons. First, we noted the second prong required the place be occupied "by reason of an activity." *Id.* We reasoned it would be difficult to imagine an appurtenance that would not be an occupied structure if merely walking over or momentarily standing on the appurtenance was occupancy for the purpose of carrying on an activity. *Id.*

Second, we noted the common law purpose of burglary was an offense against security of occupancy. *Id.* It is not enough that the structure be covered by the place requirement of the statute; there must be some activity that takes place in the structure to satisfy the second prong of the statute. *Id.*

Finally, we noted that we "construe criminal statutes strictly[] and resolve all ambiguities in favor of the accused." *Id.* We also observed that we cannot interpret statutes so broadly that we threaten a due process violation because of vagueness and uncertainty. *Id.* We thus emphasized that the second prong of the statute existed to "help narrow its parameters." *Id.*

Although the defendant's presence on the sidewalk and the stoop outside the house did not bring him within the burglary statute, the *Pace* court nonetheless affirmed his burglary conviction on another theory. *Id.* at 773–74. When the occupants attempted to retreat within the house, the defendant pushed the door to the house in in order to prevent the occupants from closing and locking the door. *Id.* at 773. The defendant thus broke the plane of the threshold of the house. *Id.* Because of his entry into the house, the evidence was sufficient to support a second-degree, but not first-degree burglary conviction. *Id.* at 773–74.

As in *Pace,* we have consistently applied this two-prong test when analyzing cases under our burglary statute. *See, e.g., Sanford*, 814 N.W.2d at 616 (noting vehicle clearly met the first prong and thus the pivotal issue of the case turned on the second prong); *State v. Sylvester*, 331 N.W.2d 130, 131–32 (Iowa 1983) (applying two-prong test to delivery truck); *State v. Sangster*, 299 N.W.2d 661, 663 (Iowa 1980) (holding evidence was sufficient when garage was used to store automobile).

In this case, a number of questions emerge. Is a house always an occupied structure because of its original purpose? If not, did the State produce sufficient evidence to satisfy the second prong of the burglary statute?

**B. Positions of the Parties.**

1. *Rooney.* Rooney asserts the evidence is insufficient to satisfy the second prong of the *Pace* test. Rooney recognizes that the State sought to satisfy the second prong in two ways: by asserting that the structure was adapted for overnight accommodation and that the structure was used for the storage or safekeeping of anything of value. Rooney argues, however, that the State's evidence fell short on each ground.

With respect to the adapted-for-overnight-accommodation alternative, Rooney argues that while the house in question might at one time have been suited for overnight accommodation that does not mean it was so adapted at the time of the particular unauthorized entry. He notes the building sat vacant for approximately ten years after the prior resident passed away in 2002, that it had been boarded up and had no electricity, that the walls were exposed in the interior of the house, that the drywall and plaster were punctured, that the pipes were disconnected, and that the building was in a general state of disrepair. Rooney further notes that by July 2012, the city had determined to tear the structure down; had entered into a demolition contract to destroy the structure; and had given the demolition company a notice to proceed on October 10, 2012, which gave the company authorization to tear down the house as of that date. Rooney notes that due to a delay in obtaining a permit, the building was not actually demolished until shortly after November 8, 2012.

In support of his argument, Rooney cites *Pace* for the proposition that burglary occurs only by reason "of some activity occurring in the structure." 602 N.W.2d at 771. Rooney argues that at the time of the alleged burglary, the structure was not adapted for overnight accommodation. He contends *State v. Anderson*, 975 N.E.2d 556, 559 (Ohio Ct. App. 2012), supports his position. In *Anderson*, the Ohio court concluded that an abandoned residence, which was condemned and was to be demolished by the city, was no longer a place maintained as a dwelling, occupied as a habitation, or specially adapted for overnight accommodation. *Id.* at 560–61.

Rooney makes a similar argument regarding the statutory alternative that burglary occurs when a structure is used for the storage

or safekeeping of anything of value. Rooney recognizes there was testimony that the copper wire and cast-iron radiators that were part of the structure had scrap value. But Rooney argues that the mere fact the items were located in the structure does not mean the place is used for the storage or safekeeping of those items. Rooney points out that if the used-for-the-storage-or-safekeeping-of-anything-of-value alternative is satisfied by component parts of a building, then virtually every building would be an occupied structure by virtue of wiring, plumbing, boards, or nails that have scrap value. He notes that *Pace* made clear that "[b]urglary was never intended to cover all structures, but only those occupied by reason of some activity occurring in the structure." 602 N.W.2d at 771.

2. *The State.* The State disagrees with Rooney's analysis. With respect to the adapted-for-overnight-accommodation alternative, the State notes that under Iowa law, it is not necessary that a person is actually present in order for a building to be an occupied structure. *See* Iowa Code § 702.12. According to the State, we have generally interpreted the term "occupied structure" broadly. In support of its argument, the State cites Iowa cases in which a garage, a driveway, a private office in a public building, and the cab of a truck were held to be occupied structures. *See State v. Willis*, 696 N.W.2d 20, 23–24 (Iowa 2005) (garage); *State v. Baker*, 560 N.W.2d 10, 13–14 (Iowa 1997) (driveway); *Bailey v. State*, 493 N.W.2d 419, 422 (Iowa Ct. App. 1992) (private office in public building), *overruled on other grounds by State v. O'Shea*, 634 N.W.2d 150, 159 (Iowa Ct. App. 2001); *State v. Buss*, 325 N.W.2d 384, 385 (Iowa 1982) (cab of truck).

Based on the premise that the statute should be given a broad reading, the State declares the condition of the house is of no particular

legal significance. As argued by the State at oral argument, "A house is a house is a house." While the State concedes the structure here had no electricity or plumbing, the State asserts the same might be true of a summer cabin near a rural Iowa lake. Further, the State maintains there is evidence in the record that transient persons were recently living in the house, thereby satisfying the adapted-for-overnight-accommodation requirement.

The State further rebuts the arguments advanced by Rooney based upon the *Anderson* case. The State rejects the teaching of *Anderson*, noting that it is risky to rely on cases from other jurisdictions with differently worded statutes, and that in Ohio, unlike Iowa, a legislative committee comment expressly stated the burglary statute did not apply to a house that has been "permanently abandoned" or "vacant for a prolonged period of time." *See* 975 N.E.2d at 559–60 (citing *State v. Green*, 480 N.E.2d 1128, 1131–32 (Ohio Ct. App. 1984)). The State further suggests that if the Iowa legislature wanted to provide an exemption from burglary prosecutions for abandoned or condemned property, it would have added an affirmative defense such as that contained in the Model Penal Code. *See* Model Penal Code § 221.1(1), 10A U.L.A. 493 (2001) (noting "[i]t is an affirmative defense to prosecution for burglary that the building or structure was abandoned"). Finally, the State directs our attention to several cases from other jurisdictions in which burglary convictions were upheld when dilapidated or abandoned structures were involved. *See Herrick v. Kansas*, 965 P.2d 844, 846, 848 (Kan. Ct. App. 1998) (affirming burglary conviction in case involving an unoccupied house being used for storage); *Askew v. Commonwealth*, No. 2008-CA-000240-MR, 2009 WL 875059, at *2 (Ky. Ct. App. Apr. 3, 2009) (affirming burglary of a dilapidated house); *State v.*

*Kowski,* 423 N.W.2d 706, 710 (Minn. Ct. App. 1988) (affirming burglary conviction of unoccupied, under-construction summer cabin).

The State contends, however, that even if there was insufficient evidence the structure in this case met the adapted-for-overnight-accommodation alternative, the evidence satisfies the used-for-the-storage-or-safekeeping-of-anything-of-value alternative. The State maintains the mere fact that the property taken was fixtures makes no difference under the burglary statute. In any event, the State contends the fact that Rooney walked out of the house with cast-iron radiators suggests there were some portable items of value in the house. The State further argues the house was used to store items of value, including historical carpentry, a fireplace mantel, copper wiring, and cast-iron radiators.

Finally, the State urges that adoption of Rooney's argument will have negative policy consequences. According to the State, if we adopt Rooney's position, an entry into a house that appears vacant, but is actually occupied at the time of the entry, will not lead to a burglary conviction. A wintertime entry into a summer vacation residence, according to the State, would no longer be burglary. Removing "so many dwelling places" from the scope of the statute, according to the State, is a consequence the legislature never intended.

**C. Analysis.** We begin our analysis by reviewing the clear teaching of *Pace* and our related caselaw. In order to support a burglary conviction, the State must produce substantial evidence to support two independent elements of our burglary statute, one related to place and the second related to activity, purpose, or use. *Pace,* 602 N.W.2d at 769. It is true that the legislature has broadly phrased the element of place and we, as a result, have found the element satisfied in a wide variety of

contexts. *See, e.g., id.* at 770 (finding "a step or stoop outside the door of a home, as well as the cement walkway leading to the step, would fall within the definition of an appurtenance to the house"); *Baker*, 560 N.W.2d at 13 (concluding a driveway is an appurtenance to a building or structure and thus within the first prong of the burglary statute); *State v. Hill*, 449 N.W.2d 626, 628 (Iowa 1989) (finding a fenced enclosure behind an automobile parts store to be an appurtenance to a building and therefore within the first prong of the burglary definition).

But this does not mean, for instance, that all houses, which are certainly the type of place that satisfy the place prong of the statute, are necessarily occupied structures. We have held that even when the place element of burglary is clearly met, we must move on to the activity or purpose prong of the definition of occupied structure. *See Sanford*, 814 N.W.2d at 616 (noting that although the vehicle clearly met the first prong, the "pivotal issue" was whether the second prong had been met); *Pace*, 602 N.W.2d at 770–71 (concluding that even though the stoop outside the door of a home satisfied the first prong, it did not meet the purpose prong, and therefore was not an occupied structure under the statute).

Under the burglary statute, the second prong related to activity or purpose can be met in three alternative ways. In this case, two alternatives are implicated, namely, the adapted-for-overnight-accommodation alternative and the used-for-the-storage-or-safekeeping-of-anything-of-value alternative. *See* Iowa Code § 702.12.

Turning to the adapted-for-overnight-accommodation alternative, we believe this alternative may be met only with evidence showing the structure was adapted for overnight accommodation at the time of the

crime.[2]   The burglary statute is designed to protect people from risks associated with entries into structures where certain types of activities are likely to occur.  *See Sanford,* 814 N.W.2d at 616.  As we stated in *Pace,* "[b]urglary was never intended to cover all structures, but only those occupied by reason of *some activity occurring in the structure.*"  602 N.W.2d at 771 (emphasis added).  We think it is not enough for the State to show that a structure was adapted for overnight accommodation ten years ago.  The activity or purpose must be present at the time of the alleged crime.  *See Pace,* 602 N.W.2d at 771 (describing the "purpose" prong and the requirement that "the subject matter of burglary be occupied *in conjunction with some activity* which takes place in the structure" (emphasis added)); *Merriam-Webster's Collegiate Dictionary* 263 (11th ed. 2014) (defining conjunction as "occurrence together in time or space").  Other states with the adapted-for-overnight-accommodation language require a contemporaneous purpose or use under their burglary statutes.  *See, e.g., Commonwealth v. Graham,* 9 A.3d 196, 204 (Pa. 2010) (holding the structure was not adapted for overnight accommodation at the time of the illegal entry); *Soliz v. State,* 785 S.W.2d 438, 439 (Tex. Ct. App. 1990) (noting "the status of the house at the time of the offense is the relevant query"); *Blankenship v. State,* 780 S.W.2d 198, 200 (Tex. Crim. App. 1989) (en banc) (noting the definitive feature of habitation as defined in the statutes is that "the structure must have

---

[2]During closing argument, the State walked away from this alternative, stating:

> I'm not saying it was adapted for accommodations.  I couldn't say why don't you guys find for me on that element because at one time it was adapted for overnight accommodations.  That's not what the law is designed to.  I don't think that really is fair here.

Closing arguments, however, are not evidence and the jury was instructed and still bound to consider the case under both alternatives.  *See* Jury Instruction No. 10 (instructing the jury that statements by the lawyers are not evidence); Jury Instruction No. 16 (instructing under both alternatives).

been adapted for and at the time of the offense be fit for accommodation 'overnight' ").

The question is thus whether the structure was *adapted* for overnight accommodation *at the time* Rooney allegedly entered it. In theory, the test of adaption could turn on the subjective intent of the property owner, an objective analysis of the condition of the property, or perhaps upon actual use of the property. The term "adapt" was defined by the *Pace* court as "to make fit, often by modification." 602 N.W.2d at 772 (quoting *Merriam-Webster's Collegiate Dictionary* 13 (10th ed. 1998)).

In this case, however, the facts show no adaptation for overnight accommodation under any theory. The city boarded up the property to keep people out. The structure had no electricity or running water. It was falling apart. The city had determined to demolish the structure, a contract of demolition had been approved, and destruction was imminent. It was not adapted for overnight accommodation.

The State contends there was evidence that transients were occasionally breaking into the property. Generally, however, the cases suggest that the purpose of burglary statutes is to protect the person with custody and control of the property, not the temporary dwelling of transients. *See State v. Hagedorn*, 679 N.W.2d 666, 671 (Iowa 2004) (noting the purpose of the burglary law is to protect the person with custody and control of the property); *Pace*, 602 N.W.2d at 768 (stating burglary law is intended to protect the security of habitation). If so, it is clear the structure was not adapted for overnight accommodation from the viewpoint of the owner, either the city or the demolition company, at the time of the alleged illegal entry.

In any event, even if actual use were relevant, the evidence on this point is insufficient to support a burglary conviction. While a neighbor

testified she and her husband had run a few people off the property in the months prior to November 4, this fleeting statement is not substantial evidence that transients were spending the night on the premises at the time of the crime. Indeed, the evidence is consistent with occasional drug usage, or temporary repose, not associated with habitation or overnight accommodation. A fire investigator who was inside the structure on the day of Rooney's arrest testified that "there were multiple spots where it appeared that possibly at one time there had been transients living in it." Such speculation that it appeared possible at one time that transients had lived in the structure does not provide substantial evidence that the structure was being used by transients at the time of the alleged crime.

We do not view our interpretation of the adapted-for-overnight-accommodation alternative as undermining the purpose of the statute. Indeed, it will be quite easy for the State to show that the vast majority of homes are adapted for overnight accommodation. By excluding a structure that is falling apart and scheduled for imminent demolition from the reach of the burglary statute, we retain the historic common law purposes of the statute, while remaining consistent with the legislature's existing statutory framework.

We now turn to the used-for-the-storage-or-safekeeping-of-anything-of-value alternative. There was substantial evidence in the record that copper wire and cast iron has some scrap value. But the activity or purpose prong requires more than the mere fact there is some scrap that might be ripped out of a dilapidated building with some marginal economic value. If this were true, every structure that contained a nail or a screw or a plank might be an occupied structure under the statute. In order to qualify under the activity and purpose

alternative, the structure must be adapted "for storage or safekeeping of anything of value." Iowa Code § 702.12; *see also Pace*, 602 N.W.2d at 772 (noting a driveway was not "made or modified as a place for the storage or safekeeping of valuable property"); *Sangster*, 299 N.W.2d at 663 (noting "an occupied structure includes a structure adapted 'for the storage or safekeeping of anything of value'" (quoting Iowa Code § 702.12)). At the time of the alleged crime, there was simply no evidence that the city had adapted or modified the structure for use to store or to keep safe anything of value. *Cf. Pace*, 602 N.W.2d at 772. The building was scheduled for demolition and the bulldozers were on the scene. Further, there is no evidence in the record that a third party had adapted the structure for storage or safekeeping of anything of value.

Of course, all this does not mean that Rooney was not guilty of any crime. He may have been guilty of theft, *see* Iowa Code § 714.1 (defining theft), and he may have been guilty of trespass, *see id.* § 716.7 (defining trespass). But he was not guilty of burglary.

### IV. Conclusion.

For all the above reasons, the decision of the court of appeals related to the sufficiency-of-the-evidence claim is reversed, the judgment of the district court convicting Rooney of burglary in the third degree is reversed, and the matter is remanded to the district court for dismissal of the charge.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND REVERSED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Zager, Waterman, and Mansfield, JJ., who dissent.

**ZAGER, Justice (dissenting).**

I respectfully dissent. The question presented in this appeal is whether the State offered sufficient evidence to support the jury's finding that Rooney "enter[ed] an *occupied structure*" as defined by Iowa Code section 702.12 (2011). Iowa Code § 713.1 (emphasis added). Specifically, we must determine whether there was sufficient evidence to support either of two alternative definitions of "occupied structure" contained in the jury instruction given to the jury by the district court. *See* Iowa Code § 702.12. Because I believe there was substantial evidence to support the jury's verdict on either of the two alternative definitions of occupied structure, I would affirm the decision of the court of appeals and the judgment of the district court.

Iowa Code section 713.1 states:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an *occupied structure*, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

(Emphasis added.)

In turn, Iowa Code section 702.12 defines the statutory term "occupied structure" as:

> [A]ny building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value.

In determining whether an alleged burglar entered what constitutes an occupied structure under Iowa Code section 702.12, we

apply a two-prong test. *State v. Sanford*, 814 N.W.2d 611, 616 (Iowa 2012). "'The first [prong] describes the type of place that can be the subject of burglary, and the second considers its purpose or use.'" *Id.* (quoting *State v. Pace,* 602 N.W.2d 764, 769 (Iowa 1999)). "[A]ny building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place" satisfies the first prong of section 702.12. Iowa Code § 702.12; *accord Sanford,* 814 N.W.2d at 616. The house in this case is clearly a structure. Thus, the issue here is whether the purpose prong of the definition found in section 702.12 has been satisfied.

"The second prong of section 702.12 requires us to consider the purpose or use of the place in question." *Sanford,* 814 N.W.2d at 616. Purposes or uses that make a particular place an occupied structure within the meaning of section 702.12 are whether the place is "adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." Iowa Code § 702.12; *accord Sanford,* 814 N.W.2d at 616. Here, the State does not claim the house in this case was occupied by persons for the purpose of carrying on business or other activity, and the district court did not provide the jury with this alternative. Rather, the district court only provided the jury with the remaining two alternative definitions of occupied structure. Thus, we must determine whether there was substantial evidence to support the jury's finding that this house was either adapted for overnight accommodation of persons or used for the storage or safekeeping of anything of value. *See* Iowa Code § 702.12. On this record, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the jury's finding that the house

is an occupied structure under either alternative given to the jury. *See Sanford*, 814 N.W.2d at 615 (recognizing that in determining whether there is substantial evidence to support a verdict, we consider "all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.' " (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002))).

Turning to the adapted-for-overnight-accommodation alternative, there was substantial evidence to support a finding that the house in this case is an occupied structure. The statute does not require a showing that the place in question is currently inhabited. *See* Iowa Code § 702.12. Rather, the adapted-for-overnight-accommodation alternative focuses on the intended use or nature of the structure itself. *See Commonwealth v. Nixon*, 801 A.2d 1241, 1247–48 (Pa. Super. Ct. 2002) (holding determination of whether a finished but uninhabited house trailer was adapted for overnight accommodation should turn on "the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited"); *Blankenship v. State*, 780 S.W.2d 198, 206, 209–10 (Tex. Crim. App. 1989) (en banc) (holding there was sufficient evidence to support jury's determination that the rental house was adapted for overnight accommodation when at the time of the burglary the structure was unoccupied, had not been lived in or rented for two years, and had the utilities turned off). In *Blankenship*, the Texas Court of Criminal Appeals stated:

> [W]hat makes a structure "suitable" or "not suitable" for overnight accommodation is a complex, subjective factual question fit for a jury's determination. Their inquiry could be guided by reference to whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and *whether the structure is of such a*

*character that it was probably intended to accommodate persons overnight* (e.g. *house,* apartment, condominium, sleeping car, mobile home, house trailer).

780 S.W.2d at 209 (emphasis added). Clearly, the structure in this case was sufficiently adapted for overnight accommodation. More importantly, whether a particular structure is adapted for overnight accommodation is a fact-intensive question for a jury to decide.

Quintessentially, a house is a structure adapted for overnight accommodation. *See Pace*, 602 N.W.2d at 773 ("The house clearly met the definition of an 'occupied structure.'"); *Webster's Third New International Dictionary* 1096 (unabr. ed. 2002) (defining a "house" as "a structure intended or used for human habitation"). Thus, viewing the evidence in the light most favorable to the State, the nature of the structure itself strongly supports a finding that this structure was adapted for overnight accommodation. The majority, however, goes to great lengths to conclude that this house is not a structure adapted for overnight accommodation. In support of its argument, it cites the facts that the city boarded up the structure to keep people out, that the structure had no electricity or running water, that the structure was falling apart, that the city had already decided to demolish the structure, that a contract of demolition of the structure had been approved, and that destruction of the structure was imminent. All of these facts may tend to show that no one was currently occupying the structure. However, these facts have little to do with whether the structure is adapted for overnight accommodation, something for which a house is intrinsically adapted. The majority has to concede that the house was at some time adapted for overnight accommodation. The majority then proceeds to decide, in its own judgment, when the structure lost its character as a structure adapted for overnight accommodation. Of

course, the majority can't provide any real guidance as to exactly when this happened, just that it did.

Many places that are adapted for overnight accommodation do not have electricity or running water and may be boarded up or not used for a significant period. Examples include camping structures such as tents, campers, or trailers, many of which do not have electricity or running water. It could be an abandoned mobile home on a farmstead. Some shacks, hunting cabins, and even some homes or motels may not possess modern amenities associated with overnight accommodation by some members of our society. *See* Robert L. Kidder & John A. Hostetler, *Managing Ideologies: Harmony as Ideology in Amish and Japanese Societies*, 24 Law & Soc'y Rev. 895, 904 (1990) (noting that many Amish homes are "free from electricity"). Nevertheless, these structures are clearly adapted for overnight accommodation. It defies common sense and logic to think that anyone would interpret our burglary statutes so narrowly to say that if someone unlawfully entered any one of these occupied structures, to commit a theft therein, this does not constitute a burglary. This cannot be what the legislature intended in enacting the burglary statute.

Moreover, the majority minimizes evidence in the record that shows this house was actually being used for overnight accommodation. The State presented testimony from a neighbor who stated that her husband had run a few people off the property in the months prior to November 4. She further testified that the house had been broken into a number of times and that she frequently observed instances when the doors of the house were wide open. One of the firefighters who was initially dispatched to the scene testified that "there were multiple spots where it appeared that possibly at one time there had been transients

living in it." The majority minimizes this evidence characterizing it as "consistent with" nonhabitable uses and "speculative." Maybe. But the majority neglects to mention testimony from the Community Development Project Coordinator for the City of Council Bluffs. She testified that prior to the break-in on November 4 she had contacted the emergency homeless shelter to board up the site, indicating there may have been an issue with overnight use of the premises by members of the homeless community. In my opinion, coupled with the fact that a house is a place intrinsically adapted for overnight accommodation, this evidence was sufficient to support the jury's verdict that this structure was adapted for overnight accommodation.

At its core, the majority's legal analysis gerrymanders the adapted-for-overnight-accommodation requirement into an abandonment defense. Under its analysis, a house is a house until it is no longer used for human habitation, i.e., abandoned. Yet, if our legislature had wanted to adopt an abandonment defense, it could easily have done so as have other states. *See, e.g.*, Conn. Gen. Stat. Ann. § 53a-104 (West, Westlaw through Jan. 1, 2015) ("It shall be an affirmative defense to prosecution for burglary that the building was abandoned."); 18 Pa. Cons. Stat. Ann. § 3502(b)(1) (West, Westlaw through 2014 Reg. Sess.) ("It is a defense to prosecution for burglary if . . . at the time of the commission of the offense . . . [t]he building or structure was abandoned."); 9 Guam Code Ann. § 37.20(a) (West, Westlaw through May 23, 2014) ("It is an affirmative defense to prosecution for burglary that the property, or building, or motor vehicle was abandoned."); *accord* Model Penal Code § 221.1(1), 10A U.L.A. 493 (2001) ("It is an affirmative defense to prosecution for burglary that the building or structure was abandoned.").

Whether our State should adopt such an affirmative defense to the crime of burglary is a policy determination for our legislature, not this court.

I turn now to the used-for-the-storage-or-safekeeping-of-anything-of-value alternative. Here, too, I believe the State offered sufficient evidence to support the jury's verdict. In a cursory fashion, the majority concludes, "At the time of the alleged crime, there was simply no evidence that the city had adapted or modified the structure for use to store or to keep safe anything of value." This is clearly erroneous. Contrary to the majority's assertion, the record shows that the city used the house for the storage and safekeeping of several things of value. The Community Development Project Coordinator testified that the house contained "special historic features that were left in the property that [the City was] maintaining." She testified that several items in the house were of historical significance, namely some elements of carpentry, such as the fireplace mantel. She also testified that the city made efforts to board up the property, and that when she received reports that "the property was wide open" or that "boards were removed," she would "call people and have them secure the site." When asked by the State if "the City of Council Bluffs continue[d] to take an interest in th[e] property right up until the time it was demolished?" she responded, "Yes. Yes." On cross-examination, she testified that she got a call from the historic society on the day the building was demolished "and they wanted to know if they could still get in there." It cannot be reasonably disputed that the city was attempting to safeguard the contents of the house.

One of the firefighters who was initially dispatched to the scene testified that he had investigated multiple metal thefts. He further testified that based on his investigation, "It appeared that . . . wire had been tried to [be] remove[d from the house]; and where they couldn't

exactly remove it from the wall, they just cut it, took what they could, basically stripping the house for copper." He also testified that it appeared as if someone had entered the house and removed several of its cast-iron radiators. Based on his experience, he testified that copper has a value of approximately "$3.11 a pound" and that cast iron sells for approximately "$200 per ton."

This record shows the house contained items of both historical and monetary value and that the city took affirmative steps to protect its interests by boarding up the house. When the city discovered that unauthorized individuals had entered the house, it took action to resecure the site. The city had an interest in securing the property up until the time it was actually demolished, and until the time the property was demolished, the city was engaged in conversations with community members who were interested in obtaining items from the property. In my opinion, this is sufficient to support a jury finding that the house was being used for the storage or safekeeping of valuable things.

The majority supports its analysis by making the following observation:

> [T]he activity or purpose prong requires more than the mere fact there is some scrap that might be ripped out of a dilapidated building with some marginal economic value. If this were true, every structure that contained a nail or a screw or a plank might be an occupied structure under the statute.

The majority misses the point. First, there doesn't have to be a completed act. *See* Iowa Code § 713.1. The clear language of the statute only requires the "intent to commit a felony, assault or theft." *Id.* Just as with many of our criminal statutes, it is not necessary the defendant complete the act. *See id*; *see also id.* § 711.1 ("It is immaterial to the question of guilt or innocence of robbery that property was or was not

actually stolen."). Moreover, here we do have the completed act of a theft. Second, there does not have to be anything of value contained within the structure. *See* Iowa Code § 702.12. If the *purpose* of the structure is for the storage or safekeeping of property, it is an occupied structure as defined in the statute, regardless of what is contained inside or its value. *See id.* Moreover, here the house did contain items of historical and monetary significance. This is evidenced not only by the above-mentioned testimony of the city employee and the firefighter, but also by the fact that Rooney actually committed the crime of theft by taking the cast-iron radiators from the house. The only people who apparently consider these cast-iron radiators worthless are the majority. The City of Council Bluffs, a firefighter, the State, the jury, and even Rooney (by his actions) disagree.

The majority is correct in that the burglary statute is primarily designed to protect people from the risks associated with entries into structures where certain types of dangerous interactions are likely to occur. *See Sanford*, 814 N.W.2d at 618. Nevertheless, in determining whether a particular structure is an occupied structure within the meaning of the statute, the statute does not require us to engage in a case-by-case risk analysis. *See* Iowa Code § 702.12; *id.* § 713.1. This risk is already accounted for in the statute through graduated degrees of burglary based on the risks involved. *See State v. Rubino*, 602 N.W.2d 558, 564 (Iowa 1999) (recognizing the graduated nature of first-, second-, and third-degree burglary **and noting that with respect to first-degree burglary** "[t]he risk of harm to persons distinguishes the crime and elevates it in terms of proof and severity of punishment from second- or third-degree burglary"**).** Thus, in writing the burglary statute, the legislature made these risk-based, policy determinations such that the

burglary statute reflects a judgment that corresponds with the potential risk of harm to persons. True, as in this case when a house is arguably no longer actually used for purposes of human habitation, there is less risk the dangerous interactions the law seeks to deter will occur. And as in this case when it appears that individuals are not often frequenting a given structure because there is arguably little of value contained therein, there is less risk the dangerous interactions the law seeks to deter will occur. However, under the statute a person may be convicted of burglary despite the fact that the risk of a dangerous interaction is relatively low. *See* Iowa Code § 702.12 ("Such a structure is an '*occupied structure*' whether or not a person is actually present."). *Compare id.* § 713.3 (requiring presence of "one or more persons" to sustain conviction for first-degree burglary), *and id.* § 713.5(1)(*b*) (requiring presence of "one or more persons" when burglar does not possess an "explosive or incendiary device or material, nor a dangerous weapon" to sustain conviction for second-degree burglary), *with id.* § 713.6A (not requiring presence of one or more persons to sustain conviction for third-degree burglary). The law accounts for this decreased risk in the form of decreased proof requirements and punishments, not dismissal. *See Rubino*, 602 N.W.2d at 564. *Compare* Iowa Code § 713.3(2) (establishing first-degree burglary as a class "B" felony), *with id.* § 713.5(2) (establishing second-degree burglary as a class "C" felony), *with id.* § 713.6A(1) (establishing third-degree burglary as a class "D" felony or an aggravated misdemeanor). Apparently, the majority is not prepared to recognize the modern definitions and degrees of burglary, instead focusing on its own definition and interpretation of occupied structure.

There was substantial evidence in this record for the district court to instruct the jury on both alternative definitions of occupied structure,

and correspondingly to support the jury's verdict on either of the two alternative definitions.  I would affirm the decision of the court of appeals and the judgment of the district court.

Waterman and Mansfield, JJ., join this dissent.